LINCOLN REALTY COMPANY, APPELLEE, V. GARDEN CITY LAND & IMMIGRATION COMPANY, APPELLANT.

FILED SEPTEMBER 26, 1913. No. 17,322.

1. Statute of Frauds: CONTRACT: MODIFICATION. Where a contract is one required by the statute to be in writing, there must be a consideration for a modification by waiving some of its requirements, or else such new agreement must be in writing.

2. Brokers: COMMISSION: WHEN DUE. In a written contract of agency for the sale of real estate, which provides that the agent's commission shall be "due and payable when deal is closed," such commission is due and payable when the agent has brought his principal and a purchaser together, and the principal and purchaser have fully negotiated and agreed upon a sale and purchase, and have entered into an executory contract for the performance of such agreement.

3. The instructions examined, and set out in the opinion, held free from prejudicial error.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. Affirmed.

C. Petrus Peterson, Albert Hoskinson and R. W. Hoskinson, for appellant.

T. J. Doyle and G. L. De Lacy, contra.

FAWCETT, J.

From a judgment of the district court for Lancaster

county, in favor of plaintiff for commissions earned in an alleged sale of lands for defendant, defendant appeals.

The petition sets out the following contract: "Lincoln, Neb., Nov. 13, 1909. We the undesigned agree to pay the Lincoln Realty Co., of Lincoln, Neb., a commission of $3 per acre on all lands sold by them, said commission to be based on our regular selling terms, one-half cash of said purchase price, said lands owned and controlled by us in Finney and Scott counties, Kansas, said commission due and payable when deal is closed. Such parties to have the following territory: Lancaster, Otoe, Saunders, Seward, Saline, Gage and Jefferson counties, and Cass county. The Garden City Land & Immigration Co., by H. J. Wells. H. J. Wells, 407 Commerce Bldg., Kansas City, Mo."— and alleges that plaintiff sold 320 acres to J. D. Heugel, 160 acres to J. O. Greenawalt, 160 acres to H. W. Strock, and 400 acres to Clarence Shumway, "all of said lands being located in Scott county, Kansas, and sold under the terms and conditions of the contract;" that there is due plaintiff a balance on account of such commission of $2,040, for which judgment is prayed, with interest from March 8, 1910. For answer to the petition as to the sale to Heugel, defendant alleges that the sale was in part a trade or exchange, in which, "in part payment of the purchase price, there was conveyed by the purchaser to the defendant two houses and lots in Lincoln, Nebraska, and the balance of the purchase price, $3,600, was paid by the purchaser in cash;" that it was agreed between plaintiff and defendant "at the time of said sale" that one of said two houses and lots should become the property of the defendant, and the other the property of the plaintiff and one Wells, and that when the last-mentioned lot should be sold the proceeds of said sale should be divided equally between plaintiff and Wells, and the other house and lot remain the property of defendant; that the two houses represented all the profit there was to the defendant in the sale of the land to Heugel, and in consideration of that fact it was agreed

that plaintiff should accept one of the said houses and lots in full of its commission for the sale of said land and for the services rendered by said Wells in making said sale; that, after the sale of the land had been negotiated and the terms of sale agreed upon, plaintiff sent to defendant a written contract to be signed by defendant, but did not then disclose that plaintiff had received $200 on account of the purchase price, and that at the time defendant signed the contract it did not know of such payment to plaintiff; that defendant signed the contract, and its president took the same to Lincoln to close up the deal, and there, in the presence of the purchaser, the president of defendant stated that the amount of cash to be paid was $3,600, whereupon Heugel stated that he had already paid $200, and there only remained to be paid in cash $3,400, which statement plaintiff verified; that Mr. Harris, of plaintiff company, admitted he had received said $200 in cash, and that he took a check for $3,400, the balance of the purchase price which had been given to Heugel; that thereupon the president of defendant demanded of plaintiff the said $3,600, the full amount of the cash purchase price, which plaintiff refused to pay, "but the plaintiff did pay to the defendant the sum of $3,120, and kept and retained the balance of said purchase price, $480, which sum the plaintiff owes the defendant, with interest thereon from the date of its receipt by the plaintiff;" that immediately or shortly after the defendant received from plaintiff said sum of $3,120, the contract between plaintiff and defendant was by mutual consent canceled, and since that date, "which was about one week after the deal covering said half section of land was closed, the plaintiff has never been the agent of the defendant;" and denies each and every allegation in the petition not specifically admitted. It will be seen that the answer as to the three deals last above named is a general denial only. The reply is a general denial.

We will consider first the Heugel deal. As to this deal,

the assignments of error are that the court erred (1) in excluding evidence of a subsequent oral agreement with reference to compensation to plaintiff for negotiating this deal, and (2) in giving instruction 7 and 8, which direct a verdict for plaintiff as to their claim by virtue of the Heugel deal. A fair construction of the answer would be, and the evidence conclusively shows, that this deal was fully consummated and the transfer made. The evidence as to any modification of the contract with reference to commissions is in direct conflict. The testimony of plaintiff that no such modification was ever made is quite strongly corroborated by the fact that, when the deal was consummated, the deed to the two houses and lots, one-half of one of which the defendant claims plaintiff was to receive as full compensation for its services, was taken in the name of the president of defendant, and by him subsequently conveyed to one Clark, who, the president testifies, "was trustee for what we called the 'syndicate' in handling these lands." No deed has ever been executed or tendered to plaintiff for either of said lots or any portion thereof. On the trial of the case the court, on plaintiff's motion, struck out the testimony which had been given by the witness Wells, in behalf of defendant, pertaining to the question of a modification of the written contract by the alleged oral agreement to take the house and lot in lieu of the commission provided for by the written contract, on the ground that the statute of this state requires a contract of brokerage to be in writing, stating the amount of commissions, and that the alleged oral arrangement is void under the statute, "and incompetent to vary them." Instructions 7 and 8, complained of, were to the same effect. In No. 7 the jury were told that the evidence, touching the agreement to accept the house and lot in lieu of commission, should not be regarded by them, as such contract was void, not being in writing; and in No. 8 they were told that defendant was not entitled to recover upon their counterclaim for $480, being one-half of the commission upon the Heugel deal,

as stated in the written contract. In the ruling excluding testimony referred to, and in the instructions given, the district court did not err. The rule is correctly stated in the second and third paragraphs of the syllabus in *Bowman v. Wright,* 65 Neb. 661, as follows: "(2) While executory and before a breach, the terms of a written contract may be changed by a subsequent parol agreement; and such subsequent agreement requires no new consideration. (3) Where, however, the contract is one required to be in writing by the statute of frauds, there must be consideration for a modification by waiving some of its requirements, or else such new agreement must be executed." No consideration for the alleged oral modification of the contract is either alleged or proved. The allegation that the two houses represented all the profit that there was to the defendant in the sale of the land to Heugel cannot be urged as a consideration passing to plaintiff for the surrender of $960 of commission, and taking in lieu thereof one-fourth interest in the Heugel lots, which the witness Wells, in behalf of defendant, testified Harris told him were worth about $2,700.

As stated in the brief of counsel for defendant, "the three remaining transactions call for an interpretation of the agency contract with reference to the time when commissions are due." The contention made by defendant is that the words in the contract, "said commission due and payable when deal is closed," mean when the deal is finally consummated by the actual transfer of the property by the defendant to the purchaser secured by plaintiff; while plaintiff's contention is that those words mean that the commission is due and payable when plaintiff has done everything there is to be done by it; that is to say, when it has brought the purchaser and seller together, and a sale by them has been fully negotiated and agreed upon, and an executory contract for the performance of that agreement entered into between the seller and purchaser. We think the plaintiff's contention is sound and should be sustained.

This holding, we think, disposes of the case as to the Greenawalt, Strock and Shumway deals. The evidence shows that the Shumway deal was actually consummated. No consideration, therefore, need be given to that. As to the Strock deal, it is shown that a sale was made to Strock and an executory contract executed by him. He was ready and willing to consummate the deal, but the president of the defendant refused to go with him to the bank, where Strock testifies he had his money, and the cashier of which bank Strock desired to look over the papers. His testimony is positive to the point that he requested the president of defendant, who was in the small town where the bank was doing business, having come there for the purpose of consummating the deal, to go with him to the bank, and that the president refused. This testimony is contradicted by the president. There is no evidence that defendant tendered Strock a deed, but the president left town, according to Strock's testimony, without making any further attempt on his part to consummate the deal, and no deed was ever given Strock for the land purchased by him. Upon this branch of the case the court instructed the jury that the evidence disclosed that plaintiff procured and introduced Strock to the defendant; that Strock and defendant entered into a valid contract of sale for the land involved in that deal; that no deed was ever made and delivered to Strock for the property; that defendant did not receive from Strock the purchase price of said property; and that "the jury are instructed, if they find from the evidence that the said Strock, the purchaser, was financially able to carry out the terms of the said contract, then the failure to carry out that contract does not deprive the plaintiff of the right to the commission contracted for, and in this case, if the jury find that the said Strock was able to carry out the terms of said contract, its findings should be for the plaintiff for the sum of $480." The court was partially in error in stating that the defendant did not receive from Strock the purchase price of the property. It had not received the whole

purchase price, but it had received from Strock a note for
$2,500, which at the time of the trial it still held and had
never offered to return. If Strock was able to carry out
the contract, he could, under his executory contract, have
been compelled to do so, but, instead of insisting upon
performance by him, defendant never offered performance
on its part. We think further discussion of this deal is
unnecessary.

As to the Greenawalt deal: This appears to have been
to some extent an exchange of property. Defendant was
to accept from Greenawalt three lots in the town of Day-
kin and a stock of merchandise. When the deal was
agreed upon, an executory contract was entered into be-
tween defendant and Greenawalt. Mutual abstracts of
defendant's land and Greenawalt's lots were made, ex-
amined and approved. The inventory of the Greenawalt
stock of merchandise was made by Mr. Harris, of plaintiff
company, at the request of Mr. Hope, president of defend-
ant. Mr. Harris testifies that no objection was made to
the same. There is no contention made in this case that
there was to be any rebate or modification of commission.
Upon this branch of the case the court instructed the jury
that, if they found from the evidence that the defendant
refused to carry out the terms of the contract with
Greenawalt, upon such refusal taking place, plaintiff
would be immediately entitled to the commissions con-
tracted for in his contract, unless the refusal by defend-
ant to carry out the contract was for the reason that
Greenawalt was unable to perform on his part. There is
no conflict in the evidence that Greenawalt was ready
and willing and entirely able, and had prepared his deed,
ready to complete the contract.

We have been unable to discover any prejudicial error
in the record. The judgment of the district court is
therefore

AFFIRMED.

ROSE, SEDGWICK and HAMER, JJ., not sitting.