Morris Smith, Appellee, v. L. D. Morgan, Appellant.

No. 40926.

JANUARY 19, 1932.

REHEARING DENIED MAY 13, 1932.

Thornell, Thornell & Adams, for appellee.

Tinley, Mitchell, Ross & Mitchell, for appellant.

DE GRAFF, J.—One Emanuel Smith was cashier of the Nishna Valley State Bank of Riverton, Iowa. He became ill, and at the time of the inception of the activities of the parties to this litigation, was on his deathbed. It appears from the record that there existed a shortage of over $70,000 in his account with the bank. He was bonded in favor of the bank for $15,000 by a surety company. The plaintiff in this suit is his brother and the defendant is his son-in-law.

When it was learned that the cashier was short in his accounts, a conference was had March 20, 1925, between one Cowden, president of the bank, one Meek, the bank examiner from the State Banking Department, the plaintiff and the defendant. As a result of the conference, the plaintiff and the

defendant agreed in writing to protect the bank against any liability for and on account of certain manipulations of the cashier, which had wrongfully involved the bank to the extent of $10,000. This transaction is known in the record as the Sherlock-Hopkins note. Certain other considerations passed to the bank from the wife of the cashier and from this plaintiff and defendant which have no bearing upon this case other than as may be hereinafter referred to.

Sherlock brought suit against the bank to recover on what is known as the Sherlock-Hopkins note. The bank notified both this plaintiff and this defendant that it would expect them to pay whatever judgment Sherlock secured against it, and thus perform the covenants in the written agreement by which this plaintiff and defendant had agreed to hold the bank harmless from any claims resulting from the execution of the Sherlock-Hopkins note. The plaintiff in this case notified the defendant that the plaintiff intended to attend the trial and asked the defendant to accompany him, but the defendant herein told the plaintiff that he could not attend the trial, but requested that the plaintiff herein attend the trial and make the best settlement he could, and the defendant would stand back of the settlement made. The plaintiff did attend the trial, and before the trial commenced, Sherlock offered to settle for $7500. The bank favored the settlement, to such an extent that it agreed to stand $1000 of the settlement, if Smith and Morgan, plaintiff and defendant herein, respectively, would stand $6500 of the settlement. The plaintiff herein called the defendant over the phone and told him of the proposed settlement, whereupon the defendant Morgan·told Smith that he, Morgan, would give his note to Smith for one-half of the $6500 if he could settle the case on those terms. The case was settled by Smith by paying the bank $6500, and thereafter Morgan executed to Smith his note for $3250, and this is the note sued on by the plaintiff herein, to which Morgan, the defendant, interposed, as we have said before, the defenses of duress and no consideration. Broadly, the defendant claims that he believed that he was liable upon the original agreement made by himself and Smith with the bank, agreeing to hold the bank harmless from the Sherlock-Hopkins debt, and, so believing, agreed to give his note to the plaintiff. He now claims that the original agreement was secured from

him by duress and without consideration and is therefore void, and that this note sued on, growing out of said transaction, is void on account of such duress and lack of consideration. By way of reply, the plaintiff pleads waiver, estoppel, consideration, independent transaction, no duress and inducement.

It would serve no useful purpose to set out the evidence in detail, but since it is necessary for this court to pass on the' question as to whether or not the lower court properly ruled on the motions made by each party, respectively, at the close of the evidence, to direct the jury to return a verdict, a part of the evidence must necessarily be included within this opinion, and to that end we state generally the substance of the defendant's evidence to show duress. His evidence is that he had been closely associated with both Cowden, the president of the bank, and Meek, a stockholder of the bank, for twenty years before the conference was had about the shortage; that his wife, Mrs. Morgan, had called Meek to their house a few nights before the conference, and the condition of the bank was the subject of conversation; that there were no quarrels during the conference, and that it was a perfectly friendly conference, and that when he and Morris Smith signed up the original agreement and left, all of the parties were on good terms, and are still on good terms to a certain extent; that at the conference, someone, either Cowden or Meek, said something about federal authorities, and that if Morgan had known that the federal authorities had nothing to do about the shortage in the bank, he would never have done what he did; that he was told about the surety bond the cashier had given for $15,000, and that he knew what that meant; that it was talked about the bank's giving notice to the bonding company and making demand on it for the penalty of the bond, unless Smith and he substituted some other satisfactory obligation to the bank, so that it would forego its demand on the bonding company. The following question was asked Morgan:

"Q. That was said, that if you would do what you finally did, no demand would be made on the surety company for that amount covered by the bond? A. That was one of the considerations, yes, sir."

The defendant further testifies that neither Meek nor Cow-

den said that they or the bank would prosecute, nor did they threaten anything; that Morgan asked what the consequences would be if the bonding company found out and demand was made by the bank for the $15,000, as his (Morgan's) thought was for his father-in-law, the cashier, and the family of which he himself was a member by marriage; that Cowden and Meek told him the bonding company might prosecute the cashier or turn him over to the federal authorities, the United States Marshal or somebody of that kind; that Cowden and Meek were not claiming that they would do that, but were going to turn the cashier over to the surety company; that there was no member of the surety company attending the conference.

The result of the conference was, among other things, that Smith and Morgan, the plaintiff and defendant in this suit, agreed in writing to pay the bank $5000 and also agreed to hold the bank harmless from the Sherlock-Hopkins transaction; the wife of the cashier agreed that she would pay the bank $10,000 from insurance money she would receive upon the death of her husband, and would surrender some bank stock. The consideration was that "of protecting my name and family and further that of stopping any criminal and financial liability against the said Emanuel Smith or his estate at this time or for all time hereafter."

The remainder of the shortage was agreed to be taken care of by the officers, directors and stockholders of the bank.

There is no conflict in the evidence with respect to what happened at the conference, except that it was denied that any reference had been made to the federal authorities. We do not consider this, however, of sufficient importance to constitute a conflict in the evidence. Therefore, the lower court had a right to pass upon the legal effect of the evidence, when there was no material conflict with relation to it. The scintilla rule of evidence has been discarded by this court long ago, and we have adopted the rule that if reasonable minds may reasonably differ, the questions involved are for the jury. Meyer v. Houck, 85 Iowa 319; Wendt v. Foss, 161 Iowa 122; Slaughter v. McManigal, 138 Iowa 643; Sanderson v. C. M. & St. P. Ry. Co., 167 Iowa 90. If not, the question, upon proper motion, is one for the court. We cannot see how it can be successfully maintained that the defendant's evidence measured up to his obligation to

560

prove, by a preponderance thereof, duress such as to invalidate or render voidable, the contracts which he had signed. Every circumstance in the record points to the contrary. Morgan and Smith both took plenty of time to consider the proposition before they decided to sign the instruments alleged to have been procured by duress. They talked it over by themselves, while away from the influence of Cowden and the bank examiner. They wanted to save their family name; they wanted to protect the estate of Emanuel Smith from any actions for the full amount of his shortage; they did not want the bonding company to start any criminal action against the cashier; they had their own reasons for doing what they did. Under the evidence, there is nothing which would warrant us in saying that either Morgan or Smith did anything against his will. One, the brother, the other, the son-in-law of the cashier Emanuel Smith, did only what thousands of others have done without duress or persuasion. In fact, the record discloses that more consideration was shown by the bank and by its officials than might ordinarily be expected under such circumstances. This defendant, in his evidence, expressly states that the bank officials did not threaten any prosecution. From the bank's standpoint, it was immaterial whether it collected the $15,000 from the bonding company or received an equal amount from someone else, who was interested in preventing any kind of an action by the bonding company, had demand been made upon it. It is difficult to see what duress should be practiced by the bank against the defendant and the plaintiff in this suit, to require them to give promissory notes and written agreements, when the bank could have received the actual cash from the bonding company on demand. We are constrained, therefore, to hold that the defense of duress in the execution of the original instrument was not established, and hence there was nothing for the jury to pass upon in connection with such an issue. In matters of this kind, each case must stand or fall upon its own facts, and citations of authority are not necessary and will add nothing of value to this opinion.

We pass now to the question of "no consideration." In determining this question, it is necessary that we again refer to the undisputed evidence in the record. Morgan, the defendant in this suit, testified that the bank agreed that it would make no

demand on the bonding company for the $15,000, if he and Morris Smith, the plaintiff in this suit, would sign the original written agreement. Morgan says himself that that was one of the considerations for the written agreement. The fact that Morgan received nothing is not conclusive on the statement that there was no consideration for the agreement. The fact that the bank surrendered a valuable right against the bonding company is a sufficient consideration to support the original contract. Riegel v. Ormsby, 111 Iowa 10. This being true, the defense of no consideration for the giving of the original contract, and therefore no consideration for the giving of the present note, is untenable. See Queal & Co. v. Peterson, 138 Iowa 514; Burke v. Dillin, 92 Iowa 557. But the defendant argues that since a part of the consideration was that the bank was not to prosecute criminally, the note is rendered void for the reason that an agreement based upon a consideration that one will not prosecute another criminally is not enforcible. Without going into the proposition of law relied upon, a sufficient answer to this argument is that the defendant himself, under oath, testifies that the bank did not threaten to prosecute. We therefore hold that the defense of no consideration in the original agreement has not been established, but, on the contrary, from the record, and especially the record of the defendant's own testimony, a consideration for the making of the original agreement did in fact exist, and therefore the original agreement was a valid and subsisting one, under which certain covenants made by the plaintiff and the defendant were by them required to be performed.

One of the covenants thereof was that they and each of them would hold the bank harmless from the Sherlock-Hopkins note. When the suit was brought by Sherlock against the bank to recover $10,000, the plaintiff and defendant herein were obligated to hold the bank harmless from any claim which the plaintiff in that suit might establish against the bank. It accordingly notified Smith and Morgan; and Smith, in response thereto, attended the hearing, and requested that Morgan accompany him. Morgan refused, but, laboring under the idea that he was responsible under the original agreement, told Smith to go ahead and settle the case the best he could, and that he, Morgan, would stand back of the settlement. From what has been said, Morgan was liable on the original agreement and

would have been required to have performed the covenant in the agreement to protect the bank from any just claim on the Sherlock-Hopkins note. An opportunity was given by the plaintiff in that suit to settle the obligation for less than its face, and the bank, desirous of having the settlement made without further litigation, agreed that if Smith and Morgan would pay the plaintiff, Sherlock, $6500, it would pay $1000, thereby meeting the terms of settlement proposed by Sherlock. This proposal was communicated by Smith, the plaintiff, to Morgan, the defendant, and Morgan advised Smith that such a settlement would be satisfactory to him; whereupon Smith made the settlement, satisfied the bank's claim of $6500, and thereafter received from Morgan a note for $3250, one-half of the settlement made by Smith.

There are some matters which are in the record which refute the claims of duress and no consideration. It is clearly made to appear that Morgan has paid to the bank a part of the $5000 note which he and Smith gave, has voluntarily paid interest on the note in suit; that these payments were made long after Emanuel Smith had died; that the note sued on was executed long after Emanuel Smith died. Certainly, it cannot be said that Morgan was under duress when he paid a part of the $5000 note and interest on the note in suit, or when he gave the note in suit. He recognized these obligations as binding in all respects, caused others to act as though he had admitted liability, induced and counselled the plaintiff herein to make the settlement out of which arose his execution and delivery unto the plaintiff of the note in suit, and never made claim before suit was brought on this note of any duress or lack of consideration; and he should not now be allowed to assert any such claims. He has by his own actions adopted that which he claimed he did under duress and without consideration and has partially performed. He should not now be permitted to say that his actions and silence amounted to nothing, and that he is in truth and in fact not liable to the plaintiff. Kennedy v. Roberts, 105 Iowa 521; Deitrick v. Sinnott, 189 Iowa 1002; Richmond v. Dubuque & Sioux City R. R. Co., 33 Iowa 422.

It is true that the original instruments signed by the defendant and the plaintiff contained stipulations that they were executed in order to protect the family name and to stop any

criminal and financial liability against Emanuel Smith or his estate. The record does not show that any criminal prosecution was threatened by the bank or by any of its officers, but, on the contrary, discloses that no threats of criminal prosecution were made. The record does not disclose whether Emanuel Smith had any estate or not, but we may assume that if the signing of the instruments was to prevent the bank from making any claims against the cashier's estate for his defalcations, some reason exists therefor, and we may assume that the bank might have prosecuted a claim against Emanuel Smith's estate and derived some benefit therefrom. This of itself, would be a sufficient consideration for the making of the original agreement.

Since the original agreement was not secured by duress, as alleged by the plaintiff, and since there was a consideration, while the defendant alleges there was none, his defenses to the suit at bar wholly fail, and the court correctly ruled on the motions made, and the judgment entered for plaintiff against the defendant was right.—Affirmed.

WAGNER, C. J., and FAVILLE, ALBERT, and KINDIG, JJ., concur.