CLEMENT C. BUHRMAN, APPELLANT, V. INTERNATIONAL HARVESTER COMPANY, A CORPORATION, ET AL., APPELLEES.
150 N. W. 2d 220

Filed April 21, 1967. No. 36403.

Vogeltanz & Kubitschek, for appellant.

Fitzgerald, Brown, Leahy, McGill & Strom and William J. Brennan, Jr., for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

NEWTON, J.

This is an action wherein appellant Clement C. Buhrman charged appellees with a civil conspiracy. He alleged that he had a dealership agreement with appellee International Harvester Company. He had sold two tractors on which he was indebted to International Harvester Company and International Harvester Credit Corporation for which he had not made remittance to said appellees on their mortgage lien. Appellees falsely informed him that by reason of such action, he was guilty of a criminal offense and would be prosecuted therefor, and believing such threat, in reliance thereon, and acting under duress, he permitted appellees to repossess his entire stock of merchandise, which was converted by appellees to their own use. He further alleges appellees have failed to account to him for any excess received over and above $33,205.56, the amount owed by him to appellees, International Harvester Company and International Harvester Credit Corporation. All such acts were performed by appellees pursuant to a conspiracy to destroy his business, and he has been damaged by the destruction of his business, his credit, his reputation, his health, and by failure of appellees to account for the value of property converted in excess of his indebtedness.

Appellees generally denied the allegations of the petition and appellee, International Harvester Credit Corporation, cross-petitioned for money claimed to be due it by reason of the insufficiency of the property received from appellant to pay indebtedness due it from appellant. For reply appellant denied the allegations of such cross-petition.

Trial was had to a jury and the parties stipulated that appellant would first proceed with evidence relating to the question of conspiracy alone, its existence, and per-

formance. At the conclusion of appellant's evidence on this phase, a verdict was directed and returned for appellees, and the action dismissed.

The evidence introduced reflects the following facts. Appellant had been with International Harvester Company since 1946 and in October 1960, entered into the dealership agreement with International Harvester Company under which he was operating at the time in question. The agreement provided that International Harvester Company could terminate it at any time the dealer defaulted on payment of any obligation due the company, or failed to account for the proceeds of the sale of goods for which he was indebted to the company or to International Harvester Credit Corporation. On termination of such agreement, the company could repossess all goods on hand for which the dealer was indebted to it.

Appellant financed purchases with either International Harvester Company or International Harvester Credit Corporation under a mortgage or trust receipt arrangement and if with International Harvester Company, the notes were assigned to International Harvester Credit Corporation. He owed money to International Harvester Company and International Harvester Credit Corporation on open account, and under financing arrangements covering, among other items, two tractors and other equipment which had been financed, sold, and not accounted for. He admits International Harvester Company had a legal right to terminate his dealership contract on April 4, 1961, when such action occurred.

In the latter part of March 1961, appellee Devan, an employee of International Harvester Company, called, noted two tractors which had not been accounted for were missing, and was informed by appellant that they were out on demonstration. Devan returned April 3, 1961, and seeing the tractors were still missing, was going out to call on the farmers who had them when appellant informed him that he had sold them, but had

not made remittance on them to International Harvester Company. Devan then made demand for payment but was not paid. Appellant testified at various times that Devan then said, "he could be subject to a penitentiary offense," or, "he would be subject to a penitentiary offense." Such statement was made on only the one occasion. The following day, April 4, 1961, appellant signed a letter canceling his dealership contract, and also signed a repossession agreement pursuant to which International Harvester Company repossessed all machinery, parts, and equipment appellant had in stock. Appellant says he signed these instruments under duress.

Appellees John Devan, Harold Toner, Dick Cavanee, Elmer Patracek, Robert Freeman, and Donald Mullen were employees of International Harvester Company; Devan, Cavanee, and Mullen were also representatives of International Harvester Credit Corporation; and all participated in the repossessing of appellant's property and received orders by telephone from another individual who represented both companies.

Appellant assigns as error the action of the trial court in directing a verdict and dismissing his petition.

In Frank H. Gibson, Inc. v. Omaha Coffee Co., 179 Neb. 169, 137 N. W. 2d 701, the following principles were stated: "* * * The principal element of conspiracy is an agreement or understanding between two or more persons to inflict a wrong against or injury upon another. It involves some mutual mental action coupled with an intent to commit the act which results in injury. Without the scienter persons cannot conspire. * * * Any person may do business with whomsoever he desires. Also, he may refuse business relations with any person whomsoever. * * * One who causes intended or unintended harm to another by refusing to continue a business relation with him, terminable at his will, is not liable for that harm." Appellant's contract with International Harvester Company authorized it, under the circumstances which existed, to terminate the contract,

and to repossess all property financed, or for which appellant was indebted to International Harvester Company or International Harvester Credit Corporation. He contends, but does not prove, that other property was also taken.

"A civil conspiracy is a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object or a lawful object by unlawful or oppressive means." Peters v. Woodman Accident & Life Co., 170 Neb. 861, 104 N. W. 2d 490. See, also, Workman v. Workman, 174 Neb. 471, 118 N. W. 2d 764. Since appellees were acting within their legal rights in terminating the dealership contract and repossessing property not settled for, there could not be a conspiracy to perform or attain an "unlawful object." Did appellees conspire to obtain a lawful object by unlawful means? Appellant has alleged fraud. The essential elements of fraud are: The making of a false representation, knowing it was false or making it recklessly without any knowledge of its truth and as a positive assertion, with the intention that it be acted on, that it was acted on, and that injury resulted. See Campbell v. C & C Motor Co., 146 Neb. 721, 21 N. W. 2d 427. Here the only representation alleged is that regarding appellant's possibly having committed a criminal offense. Assuming that such a statement could be the basis for fraud, its falsity has not been shown, nor does it appear to have been made with knowledge of its falsity or recklessly, nor as a positive assertion.

If no unlawful act occurred by means of fraud, did appellees act unlawfully in any other respect? As heretofore noted, no unlawful conversion appeared, but did appellant agree to the termination of his dealership contract and the repossession of his property under duress as he claims? It is conceded that appellees acted within their legal rights under the dealership contract providing for such actions in the event of appellant's default

and that such objects could have been attained by appellees in any event. To constitute duress, there must be an application of such pressure or constraint as compels a man to go against his will, and takes away his free agency, destroying the power of refusing to comply with the unjust demands of another. Carpenter Paper Co. v. Kearney Hub Pub. Co., 163 Neb. 145, 78 N. W. 2d 80; 17 C. J. S., Contracts, § 175, p. 960. The statement appellant relies on as the basis for his claim of "duress" is that he was told his sale of mortgaged property and failure to account for the proceeds "could or would be a penitentiary offense." Appellant was a businessman of many years standing and thoroughly familiar with the financing of business transactions by means of chattel mortgages, conditional sales agreements, and trust receipts. He did not dispute the fact that he had committed a criminal offense and doubtless was aware of it long before the foregoing statement was made. Such statement only served to confirm what he already knew. The statement was made the day before he signed the termination letter and repossession agreement, and was not repeated, nor was he ever threatened with prosecution. Knowing what he had done, he was no doubt apprehensive and may have deemed it advisable to accede to appellees' legal demands, but certainly such remark, under the existing circumstances, did not serve to overcome his volition, compel him to go against his will, prevent him from exercising his free will, or destroy his power to refuse to comply with unjust demands. Smith v. Morgan, 214 Iowa 555, 240 N. W. 257.

It appears, therefore, that appellees were not guilty of either attempting to perform an unlawful act or of performing a lawful act by unlawful means, and that no conspiracy occurred. There being no conspiracy, and appellant having failed to prove any other grounds for recovery against any of the appellees, it must be con-

cluded that the trial court acted correctly and its judgment should be affirmed.

AFFIRMED.