M. Monte Moser et al., Appellees, v. Letha L. Jeffrey et al., Appellants, Impleaded with Clarence E. Wills et al., Appellees.

231 N. W. 2d 106

Filed June 19, 1975. No. 39597.

Robert Lloyd Jeffrey and Perry, Perry, Witthoff & Guthery, for appellants.

Joseph J. Cariotto, for appellees Moser.

Heard before White, C. J., Spencer, Boslaugh, McCown, Clinton, and Brodkey, JJ.

McCown, J.

The plaintiff purchasers of a residence property brought this action against the sellers and the sellers' real estate agent for damages for false representations. The jury returned a verdict for the plaintiffs and against the individual real estate agent and the real estate agency for $1,750; and a further verdict against the sellers in the sum of $1,750. The individual real estate agent and the real estate agency have appealed from the judgment against them. The sellers have not appealed, and the judgment against them is final.

On September 15, 1970, Clarence and Irene Wills listed their residence with the Jeffrey Company for sale. On September 19, 1970, the plaintiffs Monte and Judith Moser visited the house in the company of a real estate agent. They looked through the house and, according to plaintiffs' evidence, were advised by Mrs. Wills that the furnace was in good working order and the sellers had never had trouble with it. She also said she did not know what had caused some damage to one board which plaintiffs inquired about. The board was located at one end of the basement where the ceiling was exposed. The rest of the basement was covered by a false ceiling.

On the same day the plaintiffs executed a written offer to purchase the house for $12,500. In the offer plaintiffs requested a termite inspection of the premises. The offer provided that "should termites be found, the termites are to be treated and damages to the property, if any, corrected at seller's expense." Possession of the property was to be delivered on closing on or before October 19, 1970. The offer to purchase was accepted by the Wills on September 20, 1970.

The defendant Jeffrey Company, through the defendant Letha L. Jeffrey, hired the Usher Pest Control Company to conduct a termite inspection, which was done by Monroe Usher, Jr., in mid-October 1970. Mr. Usher testified that he found considerable evidence of termite damage in the area of the basement where the ceiling was exposed, but that he could not tell the extent of the damage because of the false ceiling in most of the basement area. He did note termite tubing however. He testified that the damage would probably not be noticed by anyone unless he had knowledge about termites. He also testified that he did not find any termite activity at the time. Mr. Usher's written report stated: "Our inspection disclosed no evidence of termite activity at the present time. There is extensive termite damage to the floor joist on the east side, to the mudsill in the

northeast corner, and to two window sills in the base-
ment. In addition, termite damage was noticed on the
west side of the basement." Mr. Usher's testimony at
trial was that he had found damage in 8 to 10 joists
and that he had meant to include "joists" in the plural
when he typed his own report.

On October 19, 1970, Mrs. Jeffrey discovered that no
one had received a termite report and she called Mr.
Usher. Usher advised her over the telephone about the
extensive termite damage to the house but that they
had not found any active termites. He was asked to de-
liver his report and he brought it to the Jeffrey office
and delivered it on the day of the closing.

At this point the evidence is in conflict. The plain-
tiffs' evidence was that both Mrs. Jeffrey and Mr. Wills
told them that there were no active termites and that
termite damage was confined to just one board and that
the report confirmed those facts. Plaintiffs' evidence
also was that after these representations were made the
closing took place before the report was received. The
defendants' evidence, on the other hand, was that no mis-
representations were made, and the report was received
and read by all parties before the closing took place.

Later in October or in early November of 1970, Mr.
Moser took down the false ceiling, found extensive dam-
age to the joists, and retained Mr. George Preece to
make a further termite inspection. Preece found live
termites in the porch, the northeast and the southeast
corner of the basement, and evidence of termites in
the west end of the basement. He found 10 floor joists
badly damaged, the subfloor and floor were damaged,
and there was also damage to the garage.

On October 23, 1970, the gas company red tagged the
furnace as not in condition for use. There was also
evidence that the furnace was not repairable and had to
be replaced. A real estate broker and appraiser testi-
fied that the value of the house in October of 1970, as-
suming no termite or furnace damage, was $12,500, but

that the value of the house on that date with the termite damage existing and with a furnace which was not usable was $9,000.

By agreement of the court and counsel for all parties, five separate forms of verdict were submitted to the jury with specific instructions that only one form would be completed and all others returned. The verdict forms were for the plaintiffs and against all defendants; for all defendants and against the plaintiffs; for the plaintiffs and against the Wills but not against the Jeffreys; for the plaintiffs and against the Jeffreys but not against the Wills; and the fifth form, which was for the plaintiffs and in a separate amount as against the Wills and in a separate amount as against the Jeffreys.

The jury returned its verdict on the fifth form against the defendants Letha L. Jeffrey and Jeffrey Company, a corporation, and assessed the amount at $1,750. It further found for the plaintiffs and against the defendants Wills and assessed the amount of that recovery at $1,750. Mrs. Jeffrey and Jeffrey Company filed a motion for new trial, which was overruled, and this appeal by those defendants followed.

The defendants' attack is generally directed at the giving of various instructions, the sufficiency of the evidence, and the form of the verdict returned.

The defendants do not assign as error the failure to give any requested instruction. The assignments of error assert that each of the instructions actually given was erroneous and that the instructions as a whole were vague and confusing.

The record discloses that the court submitted the proposed instructions to counsel for all the parties and that they had approximately one-half hour to examine them. After the court reviewed with counsel the summarized provisions of each individual instruction, each counsel stated to the court that there was no objection to the proposed instructions and that additional time to study them was not necessary. The failure to object to in-

structions after they have been submitted to counsel for review will preclude raising an objection on appeal. Libbey-Owens Ford Glass Co. v. L & M Paper Co., 189 Neb. 792, 205 N. W. 2d 523.

The defendants contend that the evidence is insufficient to establish any liability upon these defendants for statements by Mrs. Wills as to the condition of the furnace. The jury was at least generally instructed to that effect however. Only Mrs. Wills is charged with making representations as to the furnace, and the evidence shows only Mrs. Wills made any such representations. Instruction No. 2 made those facts clear and instruction No. 12 specifically instructed the jury that any false or fraudulent representations made by either of the defendants Wills were binding upon both of the defendants Wills, but that any false representations made by the defendant Letha L. Jeffrey were binding upon all defendants. If the defendants had wanted any more specific instruction, they were at liberty to request one, but they did not do so. Taken as a whole, the instructions given were not confusing and did not authorize the jury to impose liability upon the appealing defendants for the misrepresentations made by Mrs. Wills.

The appealing defendants assert that the evidence is insufficient to establish fraud as against them, and therefore insufficient to support the judgment. If only defendants' evidence is considered the assertion might well be accurate, but the plaintiffs' evidence is directly contradictory. The jury obviously accepted the plaintiffs' version. In an action at law, the essential elements of fraud are: The making of a false representation, knowing it was false or making it recklessly without any knowledge of its truth and as a positive assertion, with the intention that it be acted on, that it was acted on, and that injury resulted. Buhrman v. International Harvester Co., 181 Neb. 633, 150 N. W. 2d 220. In a case involving false representations in connection with the purchase and sale of a residence, this court

said: "The defendants produced evidence which contradicted that of the plaintiffs. The effect of this evidence was to present a question for the jury. In testing the sufficiency of the evidence to support a judgment, the evidence must be considered in the light most favorable to the successful party. * * * The verdict by a jury based upon conflicting evidence will not be set aside unless it is clearly wrong." McGerr v. Beals, 180 Neb. 767, 145 N. W. 2d 579. The evidence in this case was sufficient to support the jury verdict.

Finally, these defendants contend that the jury verdict is ambiguous, and that the jury improperly apportioned damages between joint tort-feasors. They argue that the verdict and judgment should be treated as a single judgment against all defendants in the total amount of $1,750. The record refutes the contention. At a conference with counsel in chambers before the case was submitted to the jury, the trial court inquired of each counsel about the five forms of verdict to be submitted, outlined the five forms, and explained the fifth particularly by saying that "from the pleadings you could very well call on the Jeffreys as to termite damage, and the Wills as to the furnace but I think it ought to be split up." In response to the trial court's inquiry all counsel specifically agreed to the submission of the five forms of verdict. The defendants now assert that the form was improper and ambiguous and that they have been prejudiced. The lack of prejudice is apparent. It is apparent that if the appealing defendants were liable, jointly or separately, only for the full amount of termite damage, the judgment against them would have exceeded $1,750 on the record here. Yet they now complain because the jury may have apportioned some of that liability separately against the Wills.

Not only is there a lack of prejudice to the appealing defendants, but if there was any error involved in the forms of verdict submitted and returned, it was based on or contributed to by the agreement of these defend-

ants. We see no reason why the rule precluding objections on appeal to instructions submitted to and approved by counsel at trial should not be extended to a form or forms of verdict submitted to and approved by counsel before submission to the jury. Where no objections to instructions have been made at trial, other courts have approved apportionment of verdicts against joint tort-feasors. See, Browder v. Cook, 59 F. Supp. 675; Baldwin v. Wiggins (Ky. App.), 289 S. W. 2d 729. The approval by counsel of a form or forms of verdict to be submitted to a jury constitutes a waiver of objections based on the form of verdict and precludes raising such an objection on appeal.

The judgment of the District Court is affirmed.

AFFIRMED.

NEWTON, J., participating on briefs.