Edward WAARA, on behalf of himself and all others similarly situated, Plaintiff and Respondent,

v.

George D. KANE, as Commissioner of School and Public Lands, Defendant and Appellant.

No. 12089.

Supreme Court of South Dakota.

Argued June 8, 1977.

Decided Aug. 10, 1978.

Rehearing Denied Sept. 15, 1978.

Donn Bennett and R. N. Woodruff, of Mueller & Bennett, Belle Fourche, for plaintiff and respondent.

Doyle D. Estes, Asst. Atty. Gen., Pierre, for defendant and appellant; William J. Janklow, Atty. Gen., Pierre, on the brief.

MORGAN, Justice (on reassignment).

In 1972, the Commissioner of School and Public Lands, having noted that by application of the legislatively mandated minimum bid formula[1] the school and public lands across the state were being leased for about the same amount per acre as the counties were asking the state to pay in lieu of taxes, and having determined that the formula result did not approximate the fair market value of the leases, unilaterally applied a fifty percent increase factor to the formula result for lands advertised for lease bids that year. The respondent, lessee of a tract of school land in Harding County under a five-year lease commencing in 1968

and which lease was then up for renewal, signed the renewal lease at the increased rate, noting on the lease, however, that his signing was "under protest as to lease rate." He then brought this class action seeking a declaratory judgment as to whether or not the appellant was acting reasonably and within his constitutional and statutory powers in establishing said increased rental rates.[2]

The trial court found that the act of increasing the rental rates for the school land by the appellant was arbitrary and discriminatory, and that the appellant in determining the rental rates is bound to apply exclusively the minimum formula provided by SDCL 5-5-10.4. We reverse.

■ We do not need to discuss nor decide the merits of the judgment as it relates to the arbitrary and discriminatory nature of the appellant's actions. Our decision is based upon the contract which the respondent signed agreeing to pay the increased rental rate. Respondent contends that this issue is not properly before this court. We disagree. The issue was raised in the initial pleadings; pertinent evidence is present in the record; the appellant made a proposed finding of fact and conclusion of law concerning said signing of the contract and its effect, which the trial court refused; and the appellant properly assigned said refusal as error.

In *Sabbagh v. Professional & Business Men's Life Insurance Co.,* 79 S.D. 615, 629, 116 N.W.2d 513, 520 (1962), this court stated:

The general rule is that a contracting party is bound by an agreement to which he assents in the absence of fraud, mistake or accident, undue influence and the like and he will not be heard to say he did not intend to agree to its terms.

■ It is quite clear that unless the respondent showed the presence of fraud, mistake or accident, or undue influence or

---

1. SDCL 5-5-10.1 through 5-5-10.4.

2. The class being represented in this action is considered by this court to be all those who signed renewal lease agreements at the increased rate and in doing so, noted that they were signing said agreements "under protest."

duress, he is bound by the contract he signed. Mere disagreement with the terms of the contract, in the absence of one of the external factors mentioned, is not sufficient to excuse him from his bargain.

The record is void of any evidence of fraud or mistake. The respondent admitted at trial that he had read the agreement, that he understood it, and that no one forced him to sign it. There is no evidence of any coercion or force by the appellant.

The only indication that the contract was not totally agreeable to both parties was that the respondent, in signing the contract, noted that he was doing so "under protest." Does the notation that a party is agreeing to a contract "under protest" lead to the conclusion that duress or undue influence was present? We think not.

█ The contractual defense of duress requires that there has been such constraint upon the complainant that the complainant was forced to act against his own free will. *Buhrman v. International Harvester Company,* 181 Neb. 633, 150 N.W.2d 220 (1967). As previously stated, there is no evidence of any such constraint in the present case and simply writing "under protest" is not sufficient to serve as a defense to this otherwise enforceable contract. The payment by the respondent of the increased rental rate "under protest" is immaterial. The term "under protest" contains no inherent magic. It does not per se establish compulsion or force. It may simply imply that the act is done contrary to the desire of the party indicating his protest, and nothing more.[3] *Steinberg Press Inc. v. Charles Henry Publications Inc.,* 68 N.Y.S.2d 793 (Sup.1947); *Castano v. Gabriel,* 60 Misc.2d 218, 302 N.Y. S.2d 943 (1969). See also *Matthews v. William Frank Brewing Co.,* 26 Misc. 46, 55 N.Y.S. 241 (1899).

█ None of the defenses to the contract, as stated in *Sabbagh,* supra, are present. The respondent read the contract, understood it, and signed it without being de-

ceived, mistaken or coerced. Basic contract law requires that he be bound by the contract.

A means remains, however, whereby the respondent could be excused from the performance of the contract.

█ It is the general rule that a contract which is contrary to statutory or constitutional law is invalid and unenforceable. *Miller v. Ammon,* 145 U.S. 421, 12 S.Ct. 884, 36 L.Ed. 759 (1892); *Harris v. Runnels,* 53 U.S. 79, 12 How. 79, 13 L.Ed. 901 (1851); *U.S. v. Trans-Missouri Freight Association,* 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007 (1897); *Norbeck & Nicholson Co. v. State,* 32 S.D. 189, 142 N.W. 847 (1913); *American Copying Co. v. Eureka Bazaar,* 20 S.D. 526, 108 N.W. 15 (1906); *Wright v. Lee,* 2 S.D. 596, 51 N.W. 706 (1892); *Keith Furnace Co. v. Mac Vicar,* 225 Iowa 246, 280 N.W. 496 (1938); *Black v. Consolidated Independent School District of Thayer,* 206 Iowa 1386, 222 N.W. 350 (1928); *American Trust Co. et al. v. Michigan Trust Co.,* 263 Mich. 337, 248 N.W. 829 (1933); *Independent School District No. 877 v. Loberg Plumbing & Heating Co. et al.,* 266 Minn. 426, 123 N.W.2d 793 (1963); *Wm. Lindeke Land Co. v. Kalman et al.,* 190 Minn. 601, 252 N.W. 650 (1934); *Stanser v. Cather et al.,* 85 Neb. 305, 123 N.W. 316 (1909); *Loy v. Kessler,* 76 N.D. 738, 39 N.W.2d 260 (1949). Thus, if the appellant's actions in increasing the rental rate for the public lands involved was not in accordance with statutory and constitutional law, the contract may be void or voidable.

This court, however, in *Fox v. Kneip,* S.D., 260 N.W.2d 371 (1977), ruled that the actions of the appellant in increasing the rental rates for public lands were constitutional and within his statutory authority and we find that our decision in that case is dispositive of the constitutional question here.

---

3. An exception is the payment of taxes under protest and the procedure to recover the same, as authorized in SDCL 10-27-2. However, this is strictly a statutory procedure with no applicability to the present transaction.

We therefore reverse the judgment of the trial court and leave the respondent to the contract to which he agreed.

All the Justices concur.