DOUGLAS J. DWORAK, APPELLANT, V. F. R. MICHALS, SR., AND NEBRASKA REAL ESTATE CORPORATION, A NEBRASKA CORPORATION, APPELLEES.

320 N.W.2d 485

Filed June 4, 1982. No. 43880.

Mark A. Hunzeker of Pierson, Ackerman, Fitchett & Akin, for appellant.

Bren L. Buckley of Cline, Williams, Wright, Johnson & Oldfather, for appellees.

Heard before BOSLAUGH, CLINTON, and WHITE, JJ., and BUCKLEY and CANIGLIA, D. JJ.

BUCKLEY, D.J.

This is an action brought by plaintiff, Douglas J. Dworak, a licensed real estate broker, against defendants, F. R. Michals, Sr., and Nebraska Real Estate Corporation, for the sum of $5,376, the same representing the amount of commission plaintiff claimed he was entitled to for having produced ready, willing, and able buyers to purchase an apartment complex owned by Michals and listed for sale with defendant Nebraska Real Estate Corporation, of which he was president.

The action was tried to the court, which determined that plaintiff was not entitled to a commission but was entitled to $250, which was one-half of the earnest money deposit, and entered judgment for that amount against both defendants. From this judgment plaintiff appeals.

The material facts are not disputed. The listing contract between Michals and Nebraska Real Estate Corporation was executed on April 6, 1977. It provided for a 6 percent commission in the event a purchaser was found "who is ready, willing and able to purchase the property before the expiration of this listing." It was a Multiple Listing Service contract, which meant that the listing was promulgated to all member realtors of the Multiple Listing Service in the Lincoln, Nebraska, area. This was accomplished by distribution of a Multiple Listing "sheet"

or "ticket" which contained a photograph of the building and information concerning the property, which included an "income estimate" and "expense estimate." The income estimate specified 12 five-room apartments at $215 per month rent and 10 garages renting for $15 monthly.

Plaintiff, at that time a self-employed realtor and a member of the Lincoln Multiple Listing Service, received the listing on April 12, 1977. He contacted Michael Johanns and A. J. Swanson, whom he knew were interested in buying an apartment building for investment purposes. He gave them a copy of the listing sheet and took them through the property. Johanns and Swanson used the income and expense information on the listing sheet to calculate the cash flow, i.e., whether or not the rental income would be sufficient to cover all expenses, including the projected mortgage payment. They relied on the information on the listing sheet in making their cash flow calculations, which they determined would meet their requirements.

They then submitted an offer to purchase the property for $256,000 on April 14, 1977, which offer was accepted by Michals on the same day. The offer was accompanied by a $500 deposit, which was held by defendant Nebraska Real Estate Corporation.

While the buyers were in the process of securing a mortgage loan, the appraiser for the mortgage lender called Johanns on May 3 and told him that while he was at the property many tenants expressed extreme concern over the increase in rents planned for June 1, and that many of them threatened to move. Johanns relayed this to Swanson. Since both buyers were totally unaware of any planned increase in rents, Swanson immediately called Michals, who admitted that at about the same time the property was listed for sale the tenants were sent notices of an increase in rent, averaging about $15 per unit, effective June 1. He also admit-

ted that the rents as shown on the listing sheet were not the rents currently in effect but in fact were the rents to be charged on June 1. When Swanson demanded that some form of action be taken over the situation, Michals immediately agreed to release the buyers from the purchase contract, which they elected to do, and the release was executed on the following day, with the $500 deposit returned to the buyers. The plaintiff Dworak first learned of the release later and, after his demand for a commission was refused, brought this suit.

The parties agree that if plaintiff is entitled to a commission it would be in the sum of $5,376, which is 2.1 percent of the sales price and his share as a nonlisting broker of the total commission due. Plaintiff contends he is entitled to the commission because he produced buyers who were ready, willing, and able to purchase the property when the contract to purchase was signed, notwithstanding that the sale was never closed. Defendants contend that plaintiff's commission would not be earned until the sale is consummated, unless the failure to consummate is the fault of the seller. They then contend that in fact the sale did not close because the buyers became unwilling and backed out of the agreement.

As to the applicable law, the defendants are correct. In the case of *Cornett v. Nathan,* 196 Neb. 277, 242 N.W.2d 855 (1976), we analyzed the law in this area. First, we noted that "[t]his court has consistently held that a broker has not earned his commission unless he produces a buyer who is ready, able, and willing to buy on terms satisfactory to the seller." *Id.* at 279, 242 N.W.2d at 857. In *Wisnieski v. Coufal,* 188 Neb. 200, 204, 195 N.W.2d 750, 753 (1972), we said: "A broker earns his commission and becomes entitled thereto when he produces a purchaser who is ready, able, and willing to purchase at a price and upon terms specified by the principal or satisfactory to him." In *Huston Co. v.*

*Mooney,* 190 Neb. 242, 245, 207 N.W.2d 525, 527 (1973), this court said: "Ordinarily a real estate broker, who for a commission undertakes to sell land on certain terms and within a specified period, is not entitled to compensation for his services unless he produces a purchaser within the time limited who is ready, able, and willing to buy upon the terms prescribed."

In *Cornett,* however, the buyer was financially unable to consummate the sale. It is not clear whether this condition existed when he signed the agreement to purchase. We recognized that the intent of the parties in the usual listing agreement is that the seller expects to pay a commission only if the sale is completed, because, in most cases, the only source capable of paying the commission is the proceeds from the sale of the property. We further recognized that the reason for the payment of substantial commission fees is the requirement placed upon the real estate broker that he produce not just a person who will sign an agreement to purchase on hopes and expectation, but one who is ready, willing, and able to pay.

We then went on in *Cornett* to disapprove any notion that the commission is earned as soon as the seller accepts an offer to purchase, noting that to do this would place an unreasonable and unrealistic burden on the seller to determine the buyer's readiness, willingness, and ability to complete the purchase at the time the offer to purchase is made. Rather, we placed this burden and the risk involved on the broker, since this would be his most important function in earning his commission.

We then concluded in *Cornett* that where the buyer is financially unable to close the sale, the broker has not earned his commission. In support of this conclusion, we cited the following language from *Ellsworth Dobbs, Inc. v. Johnson,* 50 N.J. 528, 551, 236 A.2d 843, 855 (1967): "When a broker is engaged

by an owner of property to find a purchaser for it, the broker earns his commission when (a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner, (b) the purchaser enters into a binding contract with the owner to do so, and (c) the purchaser completes the transaction by closing the title in accordance with the provisions of the contract.'' This three-part test, as generally stated, would apply to the unwilling as well as the financially unable buyer. Since the rationale previously stated for requiring consummation of the sale for the broker to earn the commission would be just as applicable to the buyer who becomes unwilling as it would to the buyer who becomes unable, we adopt the three-part test set out in *Ellsworth Dobbs* as the general rule to determine when a real estate broker earns his commission.

The adoption of this rule, however, does not alter the obligation of the seller to pay a commission if the sale is not completed due to the fault or refusal of the seller. We have always held that, in such event, the broker has a right to the commission called for. See, *Jones v. Stevens,* 36 Neb. 849, 55 N.W. 251 (1893); *Howell v. North,* 93 Neb. 505, 140 N.W. 779 (1913); *Lincoln Realty Co. v. Garden City Land & Immigration Co.,* 94 Neb. 346, 143 N.W. 230 (1913); *Wisnieski v. Coufal, supra.* This is also recognized in *Ellsworth Dobbs, Inc. v. Johnson, supra,* where the court, after setting out the three-part test, went on to say: ''If the contract is not consummated because of lack of financial ability of the buyer to perform or because of any other default of his . . . there is no right to commission against the seller. On the other hand, if the failure of completion of the contract results from a wrongful act or interference of the seller, the broker's claim is valid and must be paid. In short, *in the absence of default by the seller,* the broker's right to commission against the seller comes into existence only when his

buyer performs in accordance with the contract of sale." (Emphasis supplied.) *Id.* at 551, 236 A.2d at 855.

This case, then, turns on the question of whether the buyers Johanns and Swanson had a legal right to refuse to go further with the sale. If not, they become unwilling buyers and plaintiff is not entitled to a commission. If they did, the failure to close the sale is attributable to Michals and plaintiff has earned his commission.

The trial court found that the buyers backed out of a valid purchase contract. We feel the evidence is insufficient to support that finding. The decision of Johanns and Swanson not to complete the sale was based on the representation of the rents on the listing sheet and their discovery that those rents were not the current rents but new rent increases effective almost immediately after they would become the new landlord. They faced the risk of tenants leaving, with resultant vacant units and an insufficient cash flow, the very thing they relied on in their purchase offer. It would also lock them in from June 1 as to future rent adjustments. And, as Johanns put it, "there was a general pervasive fear of whether I could trust this seller."

The buyers could have defended an action by Michals for specific performance on the ground of misrepresentation. The facts support the essential elements, namely, a representation as a statement of fact, untrue when made, known to be untrue by the maker, with the intention that it be acted upon, and acted upon with resulting detriment. *Moser v. Jeffrey,* 194 Neb. 132, 231 N.W.2d 106 (1975); *Buhrman v. International Harvester Co.,* 181 Neb. 633, 150 N.W.2d 220 (1967).

Defendants argue that the buyers were not entitled to rely on the rents shown on the listing sheet because the listing contract states: "MULTI-DWELLING LISTING. This information, although

believed to be accurate, is not guaranteed." This statement does not appear on the listing sheet given to the buyers and containing the information the buyers relied on. There is no evidence that "this information" includes the statements on the listing sheet, but even if it did, neither plaintiff nor the buyers ever saw the listing contract between the defendants or otherwise were aware of it.

Defendants produced a Lincoln real estate broker who gave an expert opinion that it would be proper to list rents on the listing ticket in April that would not be effective until June, even though no notation such as "effective June 1" was made on the ticket. The expert further testified that the information is not adequate to form the basis of a purchase. But even if the listing sheet was acceptable by real estate standards, or more information is needed by the buyer, this does not alter the fact that the representations as to rents currently in effect were made and, considering the obvious purpose of the information on the sheet is to give a prospective buyer more knowledge about the property, including its investment potential, that the seller knows and intends that this information is likely to be disseminated to the prospective buyer.

It is, of course, the rule that the finding of the trial court in a jury-waived law action will not be disturbed on appeal unless clearly wrong. *Henkle & Joyce Hardware Co. v. Maco, Inc.,* 195 Neb. 565, 239 N.W.2d 772 (1976). Here, there is no evidence in conflict which is relevant to the determination of the right of the buyers to refuse to consummate the sale. It becomes a matter of law and we find that the buyers did have a lawful right to decide not to complete the purchase and that, therefore, the failure to complete the contract to sell is attributable to the conduct of Michals, which therefore entitles the plaintiff to his commission.

Plaintiff's entitlement to the commission is from

the seller Michals, but not from defendant Nebraska Real Estate Corporation. The Multiple Listing Service contract obligates the parties to pay 2.1 percent of the sales price, or 35 percent of the 6 percent total commission, to a member broker, such as plaintiff, who procures the buyer. The plaintiff, then, is a third-party beneficiary of the listing contract. The beneficiaries of a contract may recover thereon, though not named as parties, when it appears by express stipulation, or by reasonable intendment, that the rights and interests of such beneficiaries were contemplated and being provided for therein. *Fowler v. Doran,* 123 Neb. 37, 241 N.W. 759 (1932). Since defendant Nebraska Real Estate Corporation did not receive the commission, the plaintiff's right to recover the commission due him is against defendant Michals.

The judgment of the District Court is reversed and the cause remanded with directions to enter judgment for the plaintiff against defendant Michals in the sum of $5,376 plus interest from May 15, 1977, that being the date of the scheduled closing of the sale, and to dismiss the action as to defendant Nebraska Real Estate Corporation.

REVERSED AND REMANDED WITH DIRECTIONS.

CLINTON, J., participating on briefs.