■ AUDREY COCKFIELD, as Parent and Natural Guardian of ALFRED COCKFIELD, an Infant, Appellant, v RIVA APOTHEKER, Respondent. — In an action to recover damages for personal injuries, etc., the plaintiff appeals from so much of an order of the Supreme Court, Queens County, entered February 21, 1980, as (1) refused to deny outright the defendant's motion to vacate her default in failing to timely serve a proper answer, (2) excused the default, (3) enjoined the plaintiff from enforcing the default judgment, and (4) awarded the plaintiff $1,500 costs and disbursements to be paid by the defendant's attorney as a condition for denial of the motion. Order modified by increasing the sum directed to be paid by the defendant's attorney to $2,500. As so modified, order affirmed insofar as appealed from, with $50 costs and disbursements to plaintiff. On this record, the amount awarded to the plaintiff as and for costs and disbursements is inadequate to the extent indicated. Damiani, J.P., O'Connor and Thompson, JJ., concur.

Gibbons, J., dissents and votes to reverse the order insofar as appealed from, and to deny defendant's motion outright, with the following memorandum: I cannot concur with my learned colleagues for the reason that this case presents a persistent course of indifference and delaying tactics on the part of the defendant's attorney which amounts to no more and no less than law office failure which should not be countenanced and, under the rationale of *Barasch v Micucci* (49 NY2d 594), precludes the exercise of the court's discretion in granting defendant's motion to vacate the judgment by default against her. After the defendant's initial default in serving her answer about 33 days late was excused by an order of the Supreme Court, Queens County, dated February 1, 1979, upon condition that she serve an answer containing certain corrections, she, notwithstanding, willfully and defiantly served the original answer again. Following a motion thereafter brought by the defendant for an order to determine the answer so served to be in compliance and a cross motion by the plaintiff for judgment by default, the same court, by order entered on August 2, 1979, determined that the defendant had not complied with the first order and "once again directed [the defendant] to serve a personally verified answer, as directed [in the order of] February 1, 1979" and provided that, upon failure to so comply, the plaintiff may submit an ex parte order setting the case down for an inquest and assessment of damages. The latter order with notice of entry was served on August 27, 1979 and the last day for the service of the answer was September 19, 1979. There again being no timely compliance with said order, the plaintiff, on October 1, 1979, applied for such ex parte order, which was granted on October 10, 1979, and provided for the inquest to be held on November 27, 1979. A copy of this order was served on the attorney for the plaintiff on November 12, 1979. The record discloses that instead of serving the answer on or before September 19, 1979, it was not served until September 25, 1979. It was not received until October 4, 1979, and *again* rejected as untimely by letter from plaintiff's attorney in which defendant's counsel was informed that an ex parte order for an inquest had been submitted for the court's signature. There was no further response from the defendant's attorney, and an inquest was held on November 27, 1979, resulting in a judgment of $65,000 which the defendant now seeks to vacate. This belated effort to vacate the judgment was begun by order to show cause granted on December 12, 1979, which was about two months after the answer was rejected as untimely and defendant's attorney was informed of the submission of the ex parte order for inquest, and after one month had passed since the order directing the inquest had been served upon defendant's attorney. The saga of neglect and indifference does not end here. The record also reveals that, in the interim, the attorney for the defendant sent his file to another firm of attorneys with instruction that they "take over the defense" of the action. I note that there is no record of a substitution of attorneys or notice of appearance by the purported substituted attorney. The file was received by the latter law firm on November 28, 1979, the day after the inquest, and, by order to show cause granted on December 12, 1979, the new firm moved to vacate the instant default judgment. No effort whatever was made by the defendant's attorney of record to seek to be relieved of his last tardy service of the answer, nor to move under CPLR 2004 to extend his time, nor to address himself to the order for the inquest or even attempt to present himself thereat. The excuse proffered by the new attorneys as a basis for vacating the default judgment is stated as follows: "Upon receiving this file, we quite naturally undertook a thorough review of the same and discovered that an inquest had been ordered for November 27, 1979, the day

prior to our receipt of said file. It quite obviously was, therefore, impossible for this office to appear at said inquest. In addition, it is respectfully submitted to this Court that Mr. Purvin's office did not appear, as the file was at that point being transmitted to your deponent's office." The total inaction and failure on the part of the defendant's original counsel, not only to timely serve the answer when required, by September 19, 1979, but also to permit the matter to remain unattended until December 12, 1979 when other attorneys obtained an order to show cause to open the default judgment, represents blatant law office failure. This is particularly so in the light of the fact that this action was commenced by the service of a summons on September 7, 1978, and the complaint was served on October 2, 1978, with yet no service of an answer, although the defendant was offered two additional opportunities by the court, and over one year had elapsed since the complaint was served. After recognizing that "the excuse offered amount[ed] to law office failure, which is not acceptable", Special Term abused its discretion in granting the motion on that basis *(Barasch v Micucci, supra)*. This court has held, as follows: "The same criteria are equally applicable to a defendant who seeks to vacate a default judgment" *(Bruno v Village of Port Chester*, 77 AD2d 580, app dsmd 51 NY2d 769). The assertion that the defendant's insurance coverage, not exceeding $10,000, should operate as a factor to excuse the default is not persuasive for the reason that the obligation of an attorney provided by an insurance carrier to proceed with reasonable care and diligence is no less than that of an attorney obtained directly by any other litigant, and the consequences of this neglect, falling into the category of law office failure, must be dealt with similarly under the rule expressed in *Barasch (supra)*.