LTOWN LIMITED PARTNERSHIP, Respondent, v SIRE PLAN, INC., et al., Defendants, and PERRY E. BERGER, as Successor in Interest to KASSIN & GLASS, Appellant.

Second Department, May 20, 1985

APPEARANCES OF COUNSEL

*Joel Paul Berger* for appellant.

*Suozzi, English & Klein, P. C. (Brian Michael Seltzer* of counsel; *Spitzer & Feldman, P. C.* [*Ronald J. Offenkrantz*], on the brief), for respondent.

OPINION OF THE COURT

TITONE, J. P.

■ The only issue of substance on these appeals is whether an appellate court has the power to impose monetary sanctions in addition to statutory costs where it is determined that the appeals are vexatious and frivolous. We conclude that New York appellate courts possess inherent authority to do so.

I

The underlying action seeks to foreclose a mortgage on commercial realty located on Hempstead Turnpike in Levittown. It is unique only with respect to the large number of original parties defendant and the persistent opposition from one intervening party, defendant-appellant Berger.

At the time that the action was commenced, in 1981, Berger neither owned nor had any interest in the realty. It was only after most of the parties defendant had defaulted and proof of service had been filed in the county clerk's office that he began buying up fractional fee ownership shares.

Berger then sought to be substituted as a defendant on behalf of one fractional fee owner, who was then in default in answering plaintiff's amended complaint, and thereafter proceeded to oppose and delay the action at every possible stage, thereby elevating the costs of the proceedings to the point where, on these appeals, Berger himself now contests the amount of legal services utilized by plaintiff.

The record shows that plaintiff effected personal service on virtually all of the New York State resident defendants, as well as personal service, where at all possible, on vast numbers of persons outside the State. It also shows that plaintiff effected full and complete publication of the summons in both the *New York Times* and *Newsday,* followed by a later publication in those same newspapers upon plaintiff's submission of a judgment of foreclosure by default. Not one person, other than Berger, has sought to vacate a default, let alone to assert the

existence of any meritorious defense. The mortgaged property has already been sold at auction pursuant to the judgment of foreclosure at a price which will generate a surplus.

These appeals, which have been consolidated, seek judicial review of parts of no fewer than seven determinations and orders made since the commencement of the action in 1981, namely, the following:

(1) an order dated October 7, 1982, which dropped and substituted and added parties, corrected typographical errors in the names of some parties, deferred determination of plaintiff-respondent's motion for summary judgment, deferred determination of defendant-appellant's cross motion to be substituted as a party defendant and to serve an answer, and ordered oral argument at chambers with respect to defendant-appellant's predecessor's excuse for his default in timely answering plaintiff-respondent's amended complaint and with respect to the other deferred issues;

(2) an order dated December 23, 1982, which substituted defendant-appellant as a party defendant and substituted his counsel, denied defendant-appellant's application to vacate his predecessor-assignor's (defendant Glass's) default for leave to serve a belated answer, denied defendant-appellant's cross motion to dismiss the summons and complaint, granted plaintiff-respondent's motion for judgment of foreclosure and sale, and directed settlement, on notice, of plaintiff-respondent's judgment of foreclosure and sale;

(3) an order dated January 24, 1983, made on the court's own motion, which amended its prior memorandum order dated December 23, 1982, to clarify the parties upon whom service of notice of settlement of plaintiff-respondent's proposed foreclosure judgment was to be made;

(4) an order dated March 7, 1984, which granted defendant-appellant's application for reargument of the prior motion for judgment to the extent of directing additional notice, by mail and by publication in the *New York Times* and *Newsday,* to all defendants in default more than a year, of plaintiff-respondent's submission for judicial signature of a judgment of foreclosure, but which denied defendant-appellant's application to enlarge the duties and authority of the guardian ad litem appointed by Special Term, the scope of whose duties had been established by an order entered on consent;

(5) an order dated May 29, 1984, which denied defendant-appellant's request for judicial rejection of plaintiff-respondent's proposed judgment of foreclosure and sale;

(6) an order dated June 5, 1984, which denied, as moot, defendant-appellant's further application for judicial denial of plaintiff-respondent's request for judgment (plaintiff-respondent's proposed judgment then already having been signed); and

(7) the judgment of foreclosure and sale dated May 3, 1984 and entered in the office of the clerk on May 4, 1984.

Appellant has filed two separate briefs in this court containing a total of 15 points and requested an hour of argument time. As to most of these arguments, appellant is not an "aggrieved party" (CPLR 5511) and lacks standing to act as a surrogate for others. For example, his principal objection is that the statutory published notice is somewhat inadequate. At the time of the publication, however, appellant was a nonparty and voluntarily sought leave to intervene. He did not then timely assert any objection to the notice and, therefore, waived any defect (*see,* CPLR 2001, 2101 [f]; 3211 [e]; *Gager v White,* 53 NY2d 475, 488, *cert denied sub nom. Guertin Co. v Cachat,* 454 US 1086; *Aversano v Town of Brookhaven,* 77 AD2d 641).

In any event, in no sense could the purported defect be deemed jurisdictional (*Valz v Sheepshead Bay Bungalow Corp.,* 249 NY 122; *Avery v O'Dwyer,* 280 App Div 766, *affd* 305 NY 658; *Hull v Canandaigua Elec. Light & R.R. Co.,* 55 App Div 419). Appellant appeared and was heard. How then can he seriously complain about the form of the published summons?

All of the other arguments raised on these appeals similarly lack substance or legal basis. No one has controverted any of the material facts on which plaintiff-respondent's foreclosure action is based. No one has shown any procedural error which would warrant further delay in the delivery of the deed to the purchaser and distribution of the surplus to all of the nonobjecting defendants. Extended discussion of each of the 15 points is totally unwarranted.

## II

It is evident that these appeals "could not," as Judge Cardozo put it, "with semblance of reason, be decided in any way but one" and ordinarily would be "predestined, so to speak, to affirmance without opinion" (Cardozo, The Nature of the Judicial Process, at 164). Because the motives of appellant and his counsel appear, at the very least, to be suspect (*see,* Judiciary Law § 488 [2]), we have decided to raise on our own motion the issue of whether they can be penalized for pursuing such frivolous litigation (*see,* Vestal, *Sua Sponte Consideration in Appellate Review,* 27 Ford L Rev 477).

The problem cannot be viewed from a narrow perspective. The United States Court of Appeals for the Federal Circuit has correctly observed that "[t]he filing of and proceeding with clearly frivolous appeals constitutes an unnecessary and unjustifiable burden on already overcrowded courts, diminishes the opportunity for careful, unpressured consideration of nonfrivolous appeals, and delays access to the courts of persons with truly deserving causes" (*Asberry v United States Postal Serv.*, 692 F2d 1378, 1382). Moreover, as put by the United States Court of Appeals for the First Circuit, "Lawsuits are expensive and time consuming to courts and litigants alike. When an attorney fails to take an objective look at his case and appeals simply because the rules allow him to appeal, he commits a wrong against the courts and against the parties who must respond to his appeal" (*Limerick v Greenwald*, 749 F2d 97, 101; cf. *Sassower v Signorelli*, 99 AD2d 358; *Matter of Cicio v City of New York*, 98 AD2d 38).

At one time, economic considerations tended to prune frivolous appeals. Despite the occasional "fool in funds * * * able to pursue a useless or trivial appeal" (*People v Farinaro*, 36 NY2d 283, 286), the cost of preparing the record caused counsel and clients to take a hard look and carefully assess their chances before perfecting an appeal (*see*, Goodhart, *Costs*, 38 Yale LJ 849, 869). With the advent of the appendix method and less expensive reproduction systems, however, monetary considerations have become secondary.

Although the pursuit of a frivolous appeal can subject counsel to disciplinary proceedings (*see*, Code of Professional Responsibility, DR 7-102 [A] [1]; *Sassower v Signorelli, supra*, at p 360; *Matter of Lee*, 86 AD2d 131), this has not proven to be an effective deterrent. Most sister State courts and the Federal judiciary have imposed monetary sanctions on offenders — double statutory costs plus attorneys' fees (*see, e.g., Tedeschi v Barney*, 757 F2d 465; *Hughes v Hoffman*, 750 F2d 53; *Limerick v Greenwald, supra; Hagerty v Succession of Clement*, 749 F2d 217; *Scott v Younger*, 739 F2d 1464, 1465; *Evans v Arthur*, 139 Ariz 362, 678 P2d 943; *People v Beverly Bail Bonds*, 134 Cal App 3d 906, 185 Cal Rptr 36; Oberman, *Coping With Rising Caseload II: Defining the Frivolous Civil Appeal*, 47 Brooklyn L Rev 1057). These jurisdictions, however, have explicit statutory authorization to do so (*see, e.g.*, 28 USC §§ 1912, 1927; Fed Rules App Pro, rule 38 [in 28 USC, Appendix]; Note, *Statutory Penalties to Discourage Frivolous Appeals*, 28 Col L Rev 483; Note, *Penalties for Frivolous Appeals*, 43 Harv L Rev 113; 20 CJS, Costs, § 372).

At one time, New York had a statute which explicitly authorized the Court of Appeals, upon affirming a judgment, to award "damages for the delay" not exceeding 10% of the amount of the judgment (L 1858, ch 306, § 11; former Civ Prac Act § 1510 [4]). The Court of Appeals made use of the provision on occasion (*e.g., Cohen v Mayor of City of N. Y.,* 128 NY 594; *Jackson v City of Rochester,* 124 NY 624; *cf. Tisdale v President of Delaware & Hudson Canal Co.,* 116 NY 416). It was, however, deleted from the CPLR, the Advisory Committee noting that a respondent would be "adequately compensated" by 6% interest and that frivolous appeals to the Court of Appeals were apparently not a problem (Fourth Report of Advisory Comm on Prac and Pro, 1960 NY Legis Doc, No. 20, at 323; *see,* 8 Weinstein-Korn-Miller, NY Civ Prac ¶ 8204.02). The current Advisory Committee has apparently had a change of heart, recommending the enactment of legislation "to make the awarding of costs and expenses, including attorney's fees, the rule rather than the exception" as the "only practical way of reducing the volume of motion practice over discovery matters" (1983 Report of Advisory Comm on Civ Prac, 1983 McKinney's Session Laws of NY, at 2869).

Be that as it may, the absence of explicit statutory authority is not dispositive. While we recognize that it is often said that counsel fees and similar expenses "are merely incidents of litigation and thus are not compensable in the absence of statutory authority providing for such" (*City of Buffalo v Clement Co.,* 28 NY2d 241, 262-263; *see also, Matter of Green [Potter],* 51 NY2d 627; *Mighty Midgets v Centennial Ins. Co.,* 47 NY2d 12, 21-22; *Matter of Low,* 208 NY 25, 31; *Matter of City of Brooklyn,* 148 NY 107; *Perez v One Clark St. Hous. Corp.,* 108 AD2d 844; *cf. Drago v Buonagurio,* 46 NY2d 778, 779-780), no New York authority has examined the issue in the frivolous appeal context (*cf. Morrison v Filmways, Inc.,* 25 AD2d 837).

More important, the so-called "American rule", precluding the recovery of litigation expenses, is subject to a bad-faith exception. It has been "long recognized that attorneys' fees may be awarded to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" (*Rich Co. v Industrial Lbr. Co.,* 417 US 116, 129). The exception, which may be applied to counsel as well as to litigants (*Roadway Express v Piper,* 447 US 752, 756; *Nelson v Piedmont Aviation,* 750 F2d 1234, 1238), is "unquestionably [an] assertion * * * of inherent power in the courts to allow attorneys' fees in particular situations, unless [expressly] forbidden by [statute]" (*Alyeska Pipeline Co. v Wilderness Socy.,* 421 US 240, 259; *cf.*

*Collision Plan Unlimited v Bankers Trust Co.,* 63 NY2d 827, 831 [apparently recognizing this exception as the court dismissed a cause of action seeking recovery of attorneys' fees because there was "no allegation of malice"]; *Tedeschi v Barney,* 757 F2d 465, *supra;* Notes of Advisory Comm to Fed Rules App Pro 38, 43 FRD 61, 155).

This inherent power, though expressed in the context of a United States Supreme Court decision not binding upon State courts, plainly resides in New York State courts as well (*see, Gabrelian v Gabrelian,* 108 AD2d 445 [decided herewith]; *Hanna v Mitchell,* 202 App Div 504, *affd* 235 NY 534; *Riglander v Star Co.,* 98 App Div 101, *affd* 181 NY 531; *Karutz v Chicago Tit. Ins. Co.,* 112 Misc 2d 815; *Matter of People v Little,* 89 Misc 2d 742, 745, *affd* 60 AD2d 797; *Kimple v Auble,* 87 Misc 2d 997; *cf. Eash v Riggins Trucking,* 757 F2d 557). The power to vacate defaults resulting from law office failure is a useful illustration. In a memorandum in support of legislation concerning that subject, the Office of Court Administration stated: "The courts can, and in the Committee's view should, invoke their equitable powers to condition the forgiving of defaults on the defaulter's payment of costs and a court-set attorney's fee to the side delayed. The Committee would go further, and encourage the judges to set financial sanctions great enough to discourage all delay" (Memorandum of Office of Court Administration, 1983 McKinney's Session Laws of NY, at 3014-3015, citing with approval our decision in *Cockfield v Apotheker,* 81 AD2d 651). Thus, despite the absence of explicit statutory authority, we have, under the inherent powers doctrine, imposed monetary sanctions in such circumstances (*see, e.g., Gambardella v County of Nassau,* 104 AD2d 922; *Piazza v Hastings Assoc.,* 103 AD2d 738; *Mineroff v Macy's & Co.,* 97 AD2d 535; *cf. Gabrelian v Gabrelian,* 108 AD2d 445, *supra* [decided herewith]). Moreover, appellate courts elsewhere have recognized an inherent power to control the practice and procedure before them (*see, e.g., Berger v Godden,* 163 Cal App 3d 1113, ___, 210 Cal Rptr 109, 112-113).

Given the "ancient and undisputed * * * inherent power [New York courts have] over the control of their calendars, and the disposition of business before them" (*Plachte v Bancroft Inc.,* 3 AD2d 437, 438) and the "duty and function of the Appellate Division to keep the house of the law in order" (*Gair v Peck,* 6 NY2d 97, 111; *cf. Matter of First Natl. Bank v Brower,* 42 NY2d 471, 474), we have no difficulty in concluding that a New York appellate court may impose appropriate sanctions against an attorney, a client, or both for the pursuit of frivolous litigation (*see, Eash v Riggins Trucking,* 757 F2d 557, *supra; Gabrelian v*

*Gabrelian,* 108 AD2d 445, *supra* [decided herewith]). Such inherent power is not dependent upon legislative authorization.

Perhaps the Legislature can overturn or curtail this inherent power (*see, Cohn v Borchard Affiliations,* 25 NY2d 237; *but cf. Riglander v Star Co.,* 98 App Div 101, *affd* 181 NY 531, *supra*). It clearly has not done so. In fact, it has permitted the award of additional costs in "a difficult or extraordinary case" (CPLR 8303 [a] [2]). We think that it would be perverse to suggest that frivolous appellate litigation should be encouraged by precluding the imposition of penalties in the absence of an express interdiction on our power to do so.

## III

Having concluded that appellate courts in this State have the power to impose sanctions for the pursuit of frivolous litigation, we must define what constitutes a frivolous appeal as well as the procedures to be followed in imposing such sanctions.

We are cognizant that attorneys and litigants should not be inhibited in pressing novel issues or in urging a position that can be supported by a good-faith argument for an extension, modification or reversal of existing law (*see,* Code of Professional Responsibility, DR 7-102 [A] [1]; *Nelson v Piedmont Aviation,* 750 F2d 1234, 1238, *supra; cf. Textor v Board of Regents,* 87 FRD 751, 754). Accordingly, the determination of whether an appeal is frivolous must depend upon the facts of the particular case (*see,* Oberman, *Coping With Rising Caseload II: Defining the Frivolous Civil Appeal,* 47 Brooklyn L Rev 1057, 1058-1060; Note, *Penalties for Frivolous Appeals,* 43 Harv L Rev 113; Comment, *The Vexatious Litigant,* 54 Cal L Rev 1769, 1794-1802).

Other courts have offered useful guideposts. The California Supreme Court has stated that "an appeal should be held to be frivolous only when it is prosecuted for an improper motive — to harass the respondent or delay the effect of an adverse judgment — or when it indisputably has no merit — when any reasonable attorney would agree that the appeal is totally and completely without merit" (*In re Marriage of Flaherty,* 31 Cal 3d 637, 650, 646 P2d 179, 187; *see also, International Silver Co. v DiGirolamo,* 475 A2d 1143 [Me]; *Collins v North Miss. Sav. & Loan Assn.,* 445 So 2d 828 [Miss]; *Mullen v Kennard,* 674 SW2d 202 [Mo App]; *Dearborn Lbr. Co. v Upton Enters.,* 34 Wn App 490, 494, 662 P2d 76, 78). Federal decisions express the concept similarly, finding an appeal to be frivolous when "the result is obvious and the arguments of error are wholly without merit" (*Gattuso v Pecorella,* 733 F2d 709, 710) and "[t]hat circumstance

was so clear in fact and law that competent counsel could not possibly have failed to recognize it" (*In re Oximetrix, Inc.,* 748 F2d 637, 644).

We emphasize, as did the California Supreme Court, that "[a]n appeal that is simply without merit is *not* by definition frivolous" (*In re Marriage of Flaherty,* 31 Cal 3d 637, 650, 646 P2d 179, 187-188, *supra; see also, Oglesby v RCA Corp.,* 752 F2d 272, 278-280). Furthermore, "all doubts as to whether an appeal is frivolous should be resolved in favor of the appellant" (*In re Estate of Pesterkoff,* 37 Wn App 418, __, 680 P2d 1062, 1066; *see also, Breshears v Malan Oil Co.,* 671 SW2d 402, 404 [Mo App]). Sanctions should not be imposed except in the "clearest cases" (*Corona v Lundigan,* 158 Cal App 3d 764, __, 204 Cal Rptr 846, 849).

Similarly, we are not oblivious to due process concerns (*In re Marriage of Flaherty, supra; cf. Matter of Nuey,* 61 NY2d 513). The question of whether an appeal is substantively frivolous is one of law and should be determined by appellate courts from the record (*see, e.g., Scott v Younger,* 739 F2d 1464, 1465, *supra; Gattuso v Pecorella, supra,* at p 710). Factual issues concerning improper motive may be explored at oral argument on the appeal — as we did in this case — though, in some instances, an evidentiary hearing at Special Term may be warranted (*cf. Beacon Fed. Sav. & Loan Assn. v Marks,* 97 AD2d 451; *People v Beverly Bail Bonds,* 134 Cal App 3d 906, 185 Cal Rptr 36, *supra*). Any sanction should be fixed by the appellate court itself (*see, e.g., Scott v Younger, supra,* at p 1465; *Gattuso v Pecorella, supra,* at p 710; *DeWitt v Western Pac. R. R. Co.,* 719 F2d 1448, 1451; *Corona v Lundigan, supra; cf. Cockfield v Apotheker,* 81 AD2d 651, *supra*).

Purely out of an exercise of caution, we stress that the procedures outlined today apply only to civil appeals. Different considerations apply in criminal matters and while there may be instances in which a frivolous criminal appeal is pursued that warrant imposition of a sanction, such a case rarely, if ever, occurs (*see, United States v Isenhower,* 754 F2d 489, 490; *People v Borum,* 8 NY2d 177, 178; *People v Sumner,* 262 Cal App 2d 409, 69 Cal Rptr 15; *cf. People v Gonzalez,* 47 NY2d 606).

## IV

The appeals in this case are frivolous by any standard. There can be no tenable claim that the issues tendered are, in any sense, arguable or that the case presents some reason to modify established decisional law. As we have discussed, appellant is not even an aggrieved party concerning most of the issues

pressed and the law is clear and settled. In addition, appellant and his attorney are not neophytes; they are sophisticated individuals. Their misconduct is particularly egregious.

No issue of fact is perceived on this record. The frivolous nature of these appeals are "so clear in fact and law that competent counsel could not possibly have failed to recognize it" (*In re Oximetrix, Inc.,* 748 F2d 637, 644, *supra*) and "any reasonable person would agree that the point[s] [are] totally and completely devoid of merit, and, therefore, frivolous" (*Estate of Walters,* 99 Cal App 2d 552, 558, 222 P2d 100, 104). "Outside-chance opportunity for a megabucks prize must cost to play" and, therefore, the imposition of an appropriate sanction is in order (*Commonwealth Elec. Co. v Woods Hole,* 754 F2d 46, 49; *see, Tedeschi v Barney,* 757 F2d 465, *supra*).

We impose the maximum statutory costs, by treating each order as a separate appeal, and make an additional assessment of $1,500 on each separate appeal, pursuant to our inherent power discussed above. Such costs and assessment are to be borne by appellant and appellant's counsel jointly and severally. The judgment and orders should be affirmed insofar as appealed from.

THOMPSON, O'CONNOR and EIBER, JJ., concur.

Judgment of the Supreme Court, Nassau County, entered May 4, 1984, and orders of the same court dated October 7, 1982, December 23, 1982, January 24, 1983, March 7, 1984, May 29, 1984 and June 5, 1984, respectively, affirmed insofar as appealed from, with separate bills of costs and additional allowances to respondent of $1,500 on each appeal. Such costs and assessments are to be borne by appellant and appellant's counsel jointly and severally.