SUSANNE E. STRATMAN, APPELLEE AND CROSS-APPELLANT, V. KENNETH J. HAGEN, APPELLANT AND CROSS-APPELLEE.

376 N.W.2d 3

Filed November 1, 1985.   No. 84-328.

Jerome J. Ortman, for appellant.

John H. Kellogg, Jr., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

On April 16, 1979, in this action, appellee, Susanne E. Stratman, filed a "Petition To Establish Paternity" alleging that appellant, Kenneth J. Hagen, was the father of her child born December 8, 1978. Hagen filed his answer specifically denying that he was the father of the minor child and specifically denying that he had sexual relations with Stratman during the time relevant to the pregnancy in question. In preparation for trial of the action, Stratman took Hagen's deposition. In that deposition Hagen specifically denied, under oath, that he was the father of the child in question, and specifically denied, with corroborating detail, that he had any sexual relations with Stratman at any time after June of 1974.

Hagen filed a motion asking for a jury trial, as he was authorized to do by the provisions of Neb. Rev. Stat. § 13-112 (Reissue 1983), which provides in part: "The method of trial shall be the same as that in other civil proceedings except that the trial shall be by the court without a jury unless a jury be requested by the alleged father." Section 13-112 further

provides in part:

> Should it be determined in this proceeding that the alleged father is actually the father of the child, a judgment shall be entered declaring such to be the case. In the event that such a judgment is entered, the court shall retain jurisdiction of the cause, and enter such order of support as may be proper under the procedure and in the manner specified in section 13-106.

No judgment was entered declaring Hagen, the alleged father, to be the actual father.

On November 12, 1979, before the case came on for trial, the parties entered into an "Agreement of Support," which recited that Hagen entered into the agreement "without admission of paternity, in order to settle a disputed matter . . . ." Pursuant to the agreement, Hagen was to pay to Stratman the sum of $10,000, in three payments over 2 years, in settlement. Stratman agreed to accept the sum "in full satisfaction and release of any claim of support for the minor child which she may have against Kenneth J. Hagen." On December 4, 1979, the district court entered its "Decree" finding that the settlement agreement was fair and reasonable, approving the settlement which was attached to the decree, and holding that the settlement "shall have full force and effect as a judgement of this Court."

On October 28, 1983, Hagen filed his "Application for Specific Visitation." In this application Hagen alleged that after he had executed the agreement of support in 1979, he had visited the minor child for a period in excess of 2 years but that beginning in January of 1982 Stratman had refused to allow Hagen to visit "his minor son." Hagen prayed that the court allow him specific visitation with "the minor child of the parties" and award Stratman a reasonable amount of child support, that the court order Hagen to provide dental care (Hagen was a practicing dentist) and to provide the child health insurance, and for an order requiring Stratman to keep Hagen informed as to the child's activities. Hagen's application did not specifically state that Hagen was the father of the child, nor did it pray for an order determining that Hagen was the child's father.

Appellee Stratman filed an amended answer to Hagen's request for visitation. In her amended answer Stratman set out her married name and stated that during 1982 and 1983, she was married to another party; stated that she had denied visitation to Hagen; denied that Hagen had ever regularly visited the child; alleged that the agreement for support was the "settlement of a disputed paternity claim" and that the court's order of December 4, 1979, was a judgment which had not been appealed from and was, therefore, res judicata; and alleged that Hagen was estopped from now taking the position that he was the father of the child because of the legal position he had taken in the 1979 phase of this case. Stratman then filed a motion for summary judgment asking that the court dismiss Hagen's application for specific visitation and award her an attorney fee.

The trial court found that there was no genuine issue as to any material fact; that an "application for specific visitation" is not a proper procedure to establish paternity; that Hagen did not request a finding that he was the father of the child, although he "for all practical purposes is asking this Court to now find that he is the father of the minor child because, if a finding of paternity is <u>not</u> made, respondent [Hagen] certainly has <u>no</u> right of visitation" (emphasis in original); and that Hagen's implied judicial admission of paternity in his 1983 application for visitation constituted an absolute contradiction of his prior claim that he was not the father and was in violation of this court's holding in *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 313 N.W.2d 208 (1981).

The trial court then sustained Stratman's motion for summary judgment and dismissed Hagen's application for specific visitation.

Hagen appeals and in this court sets out eight assignments of error, which may be consolidated into three. Five of these assign as error the granting of the motion for summary judgment because there were genuine issues of material fact; two allege that the court erred in holding that the earlier disposition of the paternity action was res judicata; and the other alleges that the court erred in failing to consider "the best interests of the minor child in determining visitation by a natural father." Stratman

cross-appeals, seeking an attorney fee because of the vexatious nature of Hagen's actions in continuing to pursue an action which had been concluded, particularly where he had to diametrically change the position he had taken in early stages of the same lawsuit to do so. Without determining the other issues presented by Hagen, we determine that Hagen is estopped, by his conduct, from attempting to prove in this case that he is the father of the minor child in question, and we affirm the ruling of the trial court with regard to granting Stratman's motion for summary judgment.

Hagen's conduct which resulted in estoppel consisted of his filing a formal pleading specifically denying paternity; in testifying, under oath in his deposition, that he was not the father of the child in question, and in further testifying to facts which indicated that he could not have been the father; and in executing a settlement "without admission of paternity," thus requesting the trial court to dispose of the paternity issue without making any determination of paternity. There is no dispute as to any of these facts.

The effect of such a settlement has long been recognized. In *State, ex rel. Rengstorf, v. Weber*, 102 Neb. 103, 106-07, 166 N.W. 120, 121 (1918), we stated:

In 7 C.J. 969, the following rule is laid down: "Except when forbidden by statute, the mother of an illegitimate child may, by a fair settlement with the putative father, on a reasonable consideration, preclude herself * * * from the right to maintain a bastardy proceeding."

Our statute cannot be construed as forbidding such settlements. On the contrary, it was evidently the intention of the legislature to encourage them. The primary object of the statute is to induce the father of the illegitimate child to make settlement which will insure the support of the child, and in section 357, Rev. St. 1913, the mother of the child is designated as the one to be satisfied with the agreement.

It would be against public policy and a dangerous rule to announce that settlements made out of court are without merit and legal effect. . . . As the proceedings are civil, no reason can be shown why a compromise of

settlement should not be made therein the same as in all other civil cases, and such a contract, when made, is not in violation of public policy or against sound morals, as a bastardy proceeding is not a bar against criminal prosecution. *State v. Veres*, 75 Ohio St. 138. Where the parents of an illegitimate child are of full legal age and competent, it is their legal right to enter into a contract of settlement in which they provide for the support of said child. By such a contract the mother excludes herself from instituting bastardy proceedings against the putative father, unless such contract is set aside for good cause in an action brought for that purpose in the proper court.

The overall conduct of Hagen, including his actions in the settlement, constitutes equitable estoppel in this case. Hagen's undisputed actions fit squarely within the general rule we have announced in *DeBoer v. Oakbrook Home Assn.*, 218 Neb. 813, 818, 359 N.W.2d 768, 772 (1984), where we quoted with approval from *Reed v. Williamson*, 164 Neb. 99, 82 N.W.2d 18 (1957):

"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, or contract, or of remedy, as against another person who in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of property, of contract, or of remedy."

Here, Hagen is precluded from now asserting his claim that he is the actual father of the minor child. It is clear that Stratman relied on Hagen's conduct and has placed herself in a position where she could not ask for additional support from Hagen even if she still had the same evidence in 1983 that apparently she had in 1979. Hagen was before the court in 1979 and could have established his paternity by simply admitting he was the father. He explicitly did not do so, and the court is not now required to adjudge his latest whim that he now claims to remember that he was the father. Stratman pressed her claim, settled the claim, and is now free to live her life without further

interference from Hagen.

Hagen, of course, is correct in his statement of law that the granting of summary judgment is appropriate only when there is no genuine issue as to any material fact or as to the inferences to be drawn therefrom and when the moving party is entitled to judgment as a matter of law. See *Mayer v. Howard*, 220 Neb. 328, 370 N.W.2d 93 (1985). Hagen alleges that his actions since the court's decree of December 4, 1979, show that he has judicially admitted he is the father of the minor child in question, as contemplated by Neb. Rev. Stat. § 13-109 (Reissue 1983). He has alleged in his application that he is not permitted to visit "his son," and alleges that his actions have resulted in an admission of paternity. Hagen chooses to ignore the obvious fact that nowhere has any court, in this case or any other case, determined that Hagen is the father of this child born December 8, 1978; and, more importantly, Hagen will not recognize that this case is concluded.

Hagen points to the fact that this court held in *Cox v. Hendricks*, 208 Neb. 23, 302 N.W.2d 35 (1981), that in an action to establish paternity, the court has jurisdiction to award visitation rights to the father in an appropriate case. That case remains the law. Necessarily, however, the right to visitation of a minor child is premised on the determination of the relationship between the party seeking visitation and the child. If it need be said, we now say that in a paternity action the court may award visitation to the alleged father only if the court determines that the alleged father is indeed the father. If the court determines that paternity is not established, visitation may not be awarded.

In *Cox v. Hendricks, supra*, there was an admission of paternity, and the case proceeded on the issues of custody, support, and visitation. This case is entirely different. Here, in a lawsuit, Stratman alleged Hagen was the father of her minor child. Hagen denied that fact. This contested case was settled between these two disputing parties, and the settlement was approved by the court. We decide only that this case is over and that Hagen by his conduct is estopped from reopening it.

With regard to Stratman's cross-appeal seeking attorney fees in appellant's attempt to reopen a case settled without any

determination of paternity, we determine that appellee is not entitled to a fee under *State ex rel. Toledo v. Bockmann*, 218 Neb. 428, 355 N.W.2d 521 (1984), but is entitled to a fee under the theory of vexatious litigation discussed in *Holt County Co-op Assn. v. Corkle's, Inc.*, 214 Neb. 762, 336 N.W.2d 312 (1983), and in *Graham v. Waggener*, 219 Neb. 907, 367 N.W.2d 707 (1985). See Neb. Rev. Stat. § 25-824 (Cum. Supp. 1984). We have held that attorney fees may be assessed against a party whom the court determines is responsible for conduct during the course of litigation which is vexatious and unfounded to the extent it constitutes bad faith toward the other party to the litigation. Hagen requested the court's 1979 action and protected himself against future claims of Stratman in this matter. His earlier position, on which the court acted, rested on a specific denial of paternity. He has now decided, for whatever reason, to press a claim that he is indeed the father of the child and to reopen this settled lawsuit. We determine that Hagen's actions are vexatious toward Stratman. This case was settled 6 years ago. Stratman, as any litigant, is entitled to be free of any other claims of Hagen in this settled matter, particularly when such claims are premised on alleged facts which are the exact opposite of previous facts sworn to by Hagen. Accordingly, we determine that Stratman's cross-appeal on the issue of attorney fees is meritorious. Stratman is awarded the sum of $750 to apply toward the services of her attorney in this court, and the cause is remanded to the district court to award an attorney fee to Stratman for attorney services rendered to her in the district court.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED FOR FURTHER
PROCEEDINGS ON THE ISSUE OF FEES.

KRIVOSHA, C.J., concurs in the result.