FLORENCE SHANKS, APPELLANT, V. JOHNSON ABSTRACT & TITLE, INC., AND A.C. JOHNSON, APPELLEES.

407 N.W.2d 743

Filed June 19, 1987.   No. 85-779.

Randall J. Shanks of Peters Law Firm, P.C., for appellant.

Robert J. Bulger of Bulger & Jensen, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

The appellant, Florence Shanks, filed suit in the district court for Morrill County, Nebraska, against the appellees, Johnson Abstract & Title, Inc., and A.C. Johnson (jointly referred to as Johnson), for the purpose of recovering a real estate commission paid by Shanks to Johnson. The district court sustained a motion for summary judgment filed by Johnson and dismissed Shanks' petition. Thereafter, Johnson filed a motion to tax costs, pursuant to Neb. Rev. Stat. § 25-824 (Reissue 1985), alleging that the suit filed by Shanks was frivolous. The district court sustained the motion on the basis that the allegations by Shanks in her amended and substituted petition were made in bad faith. For reasons more specifically set out hereinafter, we believe that the district court was correct in sustaining the motion for summary judgment, but was in error in allowing attorney fees. For that reason, the judgment of the district court is in part affirmed, and in part reversed and remanded.

The evidence discloses that Shanks hired Johnson to sell some real estate, which Shanks owned, in Bridgeport, Nebraska. A listing agreement was executed on March 30, 1983, which provided in part that Johnson was to have the sole and exclusive right until July 1, 1983, to sell Shanks' property for an amount between $30,000 and $35,000 cash. The agreement also provided that Johnson would be paid a cash commission of 5 percent if the sale was made at that price or at other terms to which Shanks agreed.

On May 9, 1983, the buyers, Robert and Kaye Tribble, signed the purchase agreement providing that they would purchase Shanks' property for $35,000, under the following terms: a deposit of $100 to be paid at the time of the signing of the agreement; a payment of $1,900 at the time of closing; the sum of $300 per month for 12 months beginning June 1, 1983, and the remaining balance of $29,400 in June of 1984.

The parties agreed to close the transaction on or before June 1, 1983, and to transfer possession of the property to the Tribbles at that time. On May 10, 1983, Shanks accepted the terms of the agreement, and on May 18, Johnson prepared the buyers' and seller's settlement statements. The buyers and seller also executed a memorandum of sale and filed it with the county clerk of Morrill County. The memorandum provided that the property had been sold by Shanks to Tribbles and that the deed was held in escrow by Johnson "pending payment of the balance of the purchase price." The Tribbles paid $300 per month to Shanks from June of 1983 to May of 1984. On July 21, 1984, the Tribbles paid Shanks an additional $600, with a notation on the check that it was for June and July. At this point, apparently, Shanks became aware that the Tribbles did not intend to complete the transaction, and, in fact, on August 7, 1984, the Tribbles executed a quitclaim deed, conveying their interest in the property back to Shanks "in consideration of cancellation of contract." The quitclaim deed was filed in the office of the county clerk of Morrill County, Nebraska, and the plaintiff retained all payments made except for the expenses of sale and a broker's commission in the amount of $1,750 earlier paid by Shanks to Johnson. It was the broker's commission which Shanks sought to recover by her suit.

Shanks now maintains that the district court (1) erred in granting Johnson's motion for summary judgment and dismissing Shanks' petition, because there was a genuine issue as to whether the prospective purchasers were ready, willing, and able to buy the plaintiff's property on the terms fixed by Shanks and (2) erred in sustaining Johnson's motion to tax expenses and in finding that the allegations in Shanks' amended and substituted petition were made in bad faith, thereby entitling Johnson to an attorney fee. With that background, we

now turn to Shanks' first assignment of error, that there was a genuine issue of a material fact.

Recently, in the case of *Naidoo v. Union Pacific Railroad*, 224 Neb. 853, 856, 402 N.W.2d 653, 656 (1987), we said with regard to summary judgment:

> [O]n a motion for summary judgment, the moving party is entitled to judgment as a matter of law where there exists no genuine issue as to any material fact or as to the ultimate inferences to be drawn therefrom. . . . In considering such a motion, the evidence is to be viewed most favorably to the party against whom the motion is directed, giving that party the benefit of all favorable inferences which may reasonably be drawn from the evidence. . . . The moving party bears the burden of showing that no genuine issue of material fact exists and must produce enough evidence to demonstrate his entitlement to judgment if the evidence remains uncontroverted. . . . If he is successful in doing so, the burden of producing contrary evidence shifts to the nonmoving party.

See, also, *Marshall v. Radiology Assoc., ante* p. 75, 402 N.W.2d 855 (1987); *Carlson v. Waddle*, 223 Neb. 671, 392 N.W.2d 777 (1986). Shanks' argument really is to the effect that there was a burden upon Johnson to prove affirmatively the financial condition of the Tribbles before Johnson was entitled to recover the commission. Shanks is in part correct, in that we have held that in order for a broker to be entitled to his commission, the broker must prove that he has produced a ready, willing, and able buyer. *Marathon Realty Corp. v. Gavin*, 224 Neb. 458, 398 N.W.2d 689 (1987); *Dworak v. Michals*, 211 Neb. 716, 320 N.W.2d 485 (1982); *DaLee Realty, Inc. v. Kuhl*, 209 Neb. 6, 305 N.W.2d 891 (1981). This does not, however, fully reflect the law applicable to a case of this nature.

In the instant case, the evidence discloses that the closing occurred and the purchasers proceeded to fulfill the terms of the contract. It was only after some 12 months, during which the purchaser performed, that a breach occurred. Nor is there any evidence to indicate that at the time of the closing, the purchasers were not ready, willing, and able. The evidence to

the contrary, as presented on the motion for summary judgment, was that not only were the purchasers ready, willing, and able, but that, in fact, the purchasers did complete the transaction by closing in accordance with provisions of the contract. Possession was transferred to the purchasers and title placed in escrow.

Shanks argues that the rule should be that before a broker may recover a commission, the broker must prove the adequacy of the purchaser's financial condition. Shanks further argues that the commission is not earned until the contract has been *fully* performed. As suggested by Johnson, Shanks' argument, carried to its logical position, would mean that no realtor's commission would be earned until the last payment on a contract was made, even if the payment was deferred for 10 or 20 years. It would also place upon the realtor the burden of proving 10 or 20 years later that at the time of entering into the contract, the purchaser was "ready, willing, and able." We do not believe that such rule could be tolerated. Thus, we believe that when evidence was presented to the district court that the transaction closed, that the title was placed in escrow, and that the buyer was given possession of the property, sufficient evidence was presented to entitle Johnson to judgment as a matter of law, absent evidence produced by Shanks that the buyers were not "ready, willing, and able." Viewing the evidence most favorably to Shanks, against whom the motion is directed, and giving Shanks the benefit of all favorable inferences which may reasonably be drawn from the evidence, there was at that point no genuine issue of material fact existing.

Shanks' amended and substituted petition, which alleged in a conclusory manner that "the prospective buyers, were not ready, willing or able to buy said property on the terms fixed by the Plaintiff, and the prospective purchasers did not complete the transaction by closing title in accordance with the provisions of the contract," without any evidence to support the conclusion, was insufficient to raise a genuine issue of a material fact. We believe that for that reason, the district court was correct in granting Johnson's motion for summary judgment and dismissing Shanks' petition.

The issue with regard to attorney fees poses a more difficult

question. Section 25-824 now provides in part as follows:

Allegations or denials which are frivolous or made in bad faith shall subject the party or attorney pleading the same to the payment of such reasonable expenses, including reasonable attorney's fees, to be taxed by the court, as may have been necessarily incurred by the other party by reason of such pleading. If a pleading is frivolous or made in bad faith, it may be stricken.

Specifically, in their motion to tax expenses, Johnson alleged that

all allegations [after the sustaining of defendants' demurrer to plaintiff's original petition] were frivolous and made in bad faith and the conduct thereafter of the Plaintiff and her attorneys was vexatious, unfounded and dilatory and all pleadings and proceedings after the sustaining of the Demurrer to the original Petition are based on the same operative facts contained in the original Petition and ruled on in sustaining the Demurrer to the original Petition.

The district court, in its journal entry entered on October 8, 1985, specifically found that "the Motion falls within the provisions of Sec. 25-824, Neb. Rev. Stat. [Reissue 1985] and that the pleadings in the Amended And Substituted petition were made in bad faith and that the Defendants are entitled to have expenses taxed in their favor."

Unfortunately, until today, there have only been two cases decided under this version of § 25-824. They are *Stratman v. Hagen*, 221 Neb. 157, 376 N.W.2d 3 (1985), and *Graham v. Waggener*, 219 Neb. 907, 367 N.W.2d 707 (1985). In each of those cases, however, a previous lawsuit involving the same parties had determined the matter, which one of the parties was then trying to relitigate. As we observed in *Graham v. Waggener, id.* at 911, 367 N.W.2d at 710:

The cleverly crafted, but nonetheless disingenuous, argument presented to us by Graham in this case does not conquer the overriding fact that he, and his attorneys, simply chose to ignore a fully binding adverse final judgment. While Graham was certainly entitled to an adjudication of his rights, a proliferation of actions in

which the same issues are raised is not proper and will not be tolerated. *Stones v. Plattsmouth Airport Authority*, 193 Neb. 552, 228 N.W.2d 129 (1975). See, also, *Cedars Corp. v. Sun Valley Development Co.*, 213 Neb. 622, 330 N.W.2d 900 (1983). Such a tactic engenders disrespect for law and justice and unnecessarily adds to the caseload of an already overburdened judicial system.

Accordingly, we awarded the appellees an attorney fee in that case.

The difficulty with the present case is that there was a dispute regarding when, in the law, the "closing" in fact took place and what the appropriate rule of law was. While we have now, hopefully, resolved that issue, we cannot say as a matter of law that Shanks' amended and substituted petition, filed after a previous demurrer was sustained, but which added the allegation that "the prospective buyers, were not ready, willing or able to buy said property on the terms fixed by the Plaintiff, and the prospective purchasers did not complete the transaction by closing title in accordance with the provisions of the contract," was frivolous or constituted bad faith within the meaning of § 25-824, thereby entitling Johnson to an attorney fee. See Annot., Construction and Application of State Statute or Rule Subjecting Party Making Untrue Allegations or Denials to Payment of Costs or Attorneys' Fees, 68 A.L.R.3d 209 (1976).

In the case of *Ltown Ltd. v. Sire Plan*, 108 A.D.2d 435, 489 N.Y.S.2d 567 (1985), the New York Supreme Court, Appellate Division, addressed a somewhat similar question and, while in that case the court found that the action was brought frivolously and in bad faith, nevertheless set out some significant observations with which we are in agreement. The court in *Ltown Ltd.*, 108 A.D.2d at 442-43, 489 N.Y.S.2d at 573-74, said:

> We are cognizant that attorneys and litigants should not be inhibited in pressing novel issues or in urging a position that can be supported by a good-faith argument for an extension, modification or reversal of existing law . . . . Accordingly, the determination of whether an appeal is frivolous must depend upon the facts of the particular case . . . .

. . . The California Supreme Court has stated that "an appeal should be held to be frivolous only when it is prosecuted for an improper motive — to harass the respondent or delay the effect of an adverse judgment — or when it indisputably has no merit — when any reasonable attorney would agree that the appeal is totally and completely without merit" . . . . Federal decisions express the concept similarly, finding an appeal to be frivolous when "the result is obvious and the arguments of error are wholly without merit" [citation omitted] and "[t]hat circumstance was so clear in fact and law that competent counsel could not possibly have failed to recognize it" [citation omitted].

We emphasize, as did the California Supreme Court, that "[a]n appeal that is simply without merit is *not* by definition frivolous" . . . . Furthermore, "all doubts as to whether an appeal is frivolous should be resolved in favor of the appellant" . . . . Sanctions should not be imposed except in the "clearest cases" . . . .

While we recognize that in the present case, the district court did not find that the action was frivolous, but rather was brought in bad faith, we believe that the evidence viewed in light of the standards suggested in *Ltown Ltd.* does not support that position.

While we are sympathetic with the position taken by the district court and wholeheartedly join in both the purpose of § 25-824 and the view that courts should not be cluttered with suits brought frivolously or in bad faith, we do not believe that in the instant case the conclusion reached by the district court can be supported by the record. See, also, *Hessenius v. Schmidt*, 102 Wis. 2d 697, 307 N.W.2d 232 (1981). For that reason, the judgment of the district court, awarding Johnson an attorney fee in the amount of $500, pursuant to the provisions of § 25-824, is reversed and remanded with directions to disallow the request for attorney fees. The judgment of the district court is, therefore, affirmed in part, and in part reversed and remanded with directions.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.